Argued 23 January, decided 5 March, 1907.

## HIGH v. SOUTHERN PACIFIC CO.

88 Pac. 961.

RAILROADS—LIMITS OF DEPOT GROUNDS—QUESTION FOR JURY.

1. Where the evidence is conflicting as to the extent of the space reasonably required for depot grounds at a given station, the question whether a particular point is within the depot grounds should be submitted to the jury.

RAILROADS—FENCING—VARIANCE BETWEEN PLEADINGS AND PROOFS.

2. An allegation that a railroad track was not fenced at a certain point, is not supported by proof that a gate was negligently left open in a fence theretofore constructed at that point.

PLEADING—REMEDY FOR COMMINGLED CAUSES OF ACTION.

3. Where several causes of action are confused in a complaint the proper practice is to move for an order requiring them to be separately stated, or that an election be made between them, and not to move to strike out parts of the pleading.

From Marion: JOHN B. CLELAND, Judge.

Statement by MR. CHIEF JUSTICE BEAN.

This is an action by M. M. High against the Southern Pacific Co. to recover damages for animals killed by a moving train.

The defendant operates a railroad from Portland to San Francisco, and has a right of way 60 feet wide through the grounds of the United States Indian Training School at Chemawa, upon which it maintains a depot or station for receiving and discharging freight and passengers. Chemawa is not an incorporated town, city or village, platted into lots and blocks, and there are no streets or alleys crossing the railway at that place. About 1,100 feet north of the depot a county road from the east crosses the track and right of way at right angles, and then turns north, running parallel with, and a short distance west of, the right of way for about 600 feet, when it again turns west. The defendant company originally maintained fences on both sides of the right of way north from the county road with gates therein at a farm crossing opposite where the county road turns to the west. A short time prior to the killing of the plaintiff's animals it extended its side track north, to within 20 or 30 feet of the farm crossing referred to, and removed the fence along the west side to that point, with a view of arranging for the receipt and discharge of freight north of the county road crossing. It did not, however, remove the fence on the east, but continued to maintain it as before, and the evidence tends to show that on the 9th of September, 1904, the animals of the plaintiff which were being pastured in an inclosure made by such fence escaped through the gate at the farm crossing, and were killed by a moving train.

The defendant had at the time from 50 to 75 employees living in box cars on a temporary siding near the gate through which it is alleged the animals escaped. These men had a tent, bake oven, etc., inside the inclosure, and used the gate for the purpose of passing in and out, and there was evidence tending to show that the gate was carelessly and negligently left open by them, and the animals thus allowed to escape. The complaint alleges that it was the duty of the defendant, under the statute, to fence its road at the point where the animals escaped, but that it had previously removed the fence on the west to extend its depot grounds; that the taking down of the fence and the

extending of the depot grounds were wholly unnecessary to the safe or convenient transaction of its business with the public, and was for its own private advantage; that no freight or passenger business whatever was transacted at or near the gate; and that defendant, in disregard of its duty to keep its track fenced at· such point, failed and neglected to construct and maintain a fence on the west side thereof, or to maintain a gate to complete the farm crossing or keep closed the gate put in by it on the east side of such crossing, and permitted its servants, agents and employees to leave such gate open, by reason of which the horses escaped and were killed. The defendant moved to strike out that part of the complaint alleging negligence in leaving the gate open, but the motion was overruled, and the defendant answered, denying the negligence charged in the complaint, and alleging that the point where the animals entered upon the track was within its depot grounds and at a place it was not required to fence. The court below directed a nonsuit, and plaintiff appeals.     REVERSED.

For appellant there was a brief over the name of *Carson & Cannon,* with an oral argument by *Mr. Anderson M. Cannon.*

For respondent there was a brief over the names of *W. D. Fenton, George Greenwood Bingham* and *Rufus Albertus Leiter,* with oral arguments by *Mr. Bingham* and *Mr. Leiter.*

MR. CHIEF JUSTICE BEAN delivered the opinion.

1. It is unnecessary to notice the evidence at length. It is sufficient that it tended to show that the animals escaped through the gate at the farm crossing, which it is claimed was carelessly and negligently left open by the employees of the defendant. The court below, following the line of authorities which holds that in actions of this character the extent of depot grounds is a question of law for the court, and not of fact for the jury, ruled that the gate referred to was within the depot grounds, and as a consequence defendant was not required under the statute to maintain a fence at such point. Since the trial in the court below we have had occasion to examine the question

thus presented, and the rule announced is that, where the evidence as to whether a given point constitutes a part of the depot grounds of a railway company is conflicting, or different inferences may be drawn from it, the question is for the jury, and not the court: *Wilmot* v. *Oregon Railroad Co.* 48 Or. 494 (7 L. R. A. [N. S.], 202: 87 Pac. 528).

Now, we think it cannot be said in this case that the evidence was so clear and undisputed that the court could declare as a matter of law that the place where the animals entered upon the track was within the depot grounds of the defendant. The gate through which it is alleged they escaped was about 1,700 feet north of the place where it received and discharged passengers and freight, and was north of a cattle guard put in by the defendant, probably as the northmost limit of its depot grounds, and there was evidence tending to show that it was not necessary for the convenience of either the company or the public that the right of way should be unfenced at that point. There was no evidence that the company contemplated using the east side of its track north of the county road crossing for the transaction of business with the public, or, indeed, that the track could be approached from that side except along the right of way. The link put in by it subsequent to the accident, and which is designed to be used in the shipment of freight, is 400 or 500 feet south of the farm crossing, and the evidence is at least conflicting as to whether it was either necessary or convenient for the public or the company that the track should remain unfenced at the point where the gate is located. And, moreover, the defendant built and was maintaining the fence and gate as a part of the inclosure in which plaintiff's animals were being pastured, and this was evidence tending to show that the defendant did not consider such place a part of its depot grounds.

2. The defendant claims that, if it was required to maintain a fence on the east side of its track at the place where the gate is located, it had actually done so, and therefore discharged any duty devolving upon it in that regard, and that the action is

based upon the statutory liability for a failure to maintain a fence, and therefore plaintiff cannot recover, even if it was negligent in allowing the gate to remain open. An allegation of a failure to fence is not supported by proof that a gate in a fence actually constructed was negligently left open: *Stonebraker* v. *Chicago & Alton R. Co.* 110 Mo. App. 497 (85 S. W. 631) ; *Megrue* v. *Lennox,* 59 Ohio St. 479 (52 N. E. 1022).

3. But, as we understand the complaint, the gravamen of the action is negligence in leaving the gate open and thus allowing the animals to escape from the inclosure and wander onto the track. The averment that it was the duty of the defendant to fence its track at the point where the animals escaped was matter of inducement and preliminary to the charge of negligence referred to. If there were, in fact, two causes of action stated in the complaint, the defendant should have moved for an order requiring them to be separately stated, if they could be properly joined, and, if not, to require plaintiff to elect upon which he would rely. The remedy was not by motion to strike out. The complaint, we think, clearly contains a cause of action for negligence in leaving the gate open, and, if it was at a point where defendant was required to fence and its being open was due to the negligence of the defendant, it is liable: 3 Wood, Railroads. (Minor's Ed.), § 419; 3 Elliott, Railroads, § 1200; *Mooers* v. *Northern Pac. Ry. Co.* 80 Minn. 24 (82 N. W. 1085) ; *Chapman* v. *New York Cent. R. Co.* 33 N. Y. 369 (88 Am. Dec. 392) ; *Spinner* v. *New York Cent. R. Co.* 67 N. Y. 153.

Judgment reversed, and new trial ordered.          REVERSED.