Argued April 27, decided May 24, 1910.

# WEBB *v.* WOLFARD.

[108 Pac. 1005.]

BROKERS—EVIDENCE OF EMPLOYMENT.

1. In an action to recover a broker's commission, evidence *held* to show the employment of plaintiff by defendant.

BROKERS—AMOUNT OF COMMISSION.

2. Where a broker is engaged to sell property at a specified price but nothing is said as to his commission, the law implies a promise to pay the usual commission charged in that neighborhood for like services if a customary rate is shown to exist, and, if such rate is not shown, then the amount would be the reasonable value of the services rendered.

BROKERS—ACTION FOR COMMISSION—QUESTION FOR JURY.

3. Evidence in an action by a broker for his commission *held* to make the question of whether the amount of the commission was fixed, one for the jury.

WITNESSES—CROSS-EXAMINATION.

4. Where the matter inquired about on cross-examination is not material or pertinent to anything testified to by the witness on his direct examination, there is no error in excluding the inquiry.

BROKERS—ACTION FOR COMMISSION—ADMISSIBILITY OF EVIDENCE.

5. In an action for a broker's commission under a personal agreement to pay plaintiff for securing a purchaser for land, defendant was permitted to show that the land had formerly belonged to his parents, and, since their death to their heirs, that suit was instituted to parition the land, that it was sold at a referee's sale, and that it was purchased by the person plaintiff claimed to have secured as a purchaser. *Held,* that it was not error on cross-examination of the purchaser to exclude a question whether he purchased the farm at the referee's sale, and the decree and referee's report in such sale were also inadmissible, as the particular interest of the several heirs in the land or as to how the sale was consummated, or whether it was consummated at all, excepting so far as the latter showed that the purchaser was ready, willing, and able to purchase, was not material.

JUDGMENT—CONCLUSIVENESS—PERSONS BOUND.

6. A decree and referee's report in a partition suit are not competent evidence against plaintiff in an action to recover a broker's commission for selling the property partitioned, where the plaintiff was not a party to the partition proceedings.

BROKERS—ACTION FOR COMMISSION—INSTRUCTIONS.

7. In an action to recover a broker's commission for selling land, defendant contended that the land belonged to his father's estate. Plaintiff testified that he never knew defendant was administrator or that, when hiring him, defendant was acting in that capacity, and he also testified that, when he requested defendant to pay his commission, the latter said that the heirs would not pay anything, but that he would give him $25. Defendant introduced evidence that the heirs of his father and mother owned the land, and that in dealing with the purchaser of the land he

told him he could not make a binding contract without consulting the heirs, and that he had no authority to sell without consulting the heirs and the court. *Held,* that an instruction that if the jury found from the evidence that defendant placed the property in plaintiff's hands for sale, and that defendant was acting as agent for another person or other persons, but failed to disclose such agency to the plaintiff, he was personally bound by his contract as if he were the principal in fact, was warranted by the evidence.

From Marion: GEORGE H. BURNETT, Judge.

Statement by MR. JUSTICE SLATER.

Plaintiff G. A. Webb seeks by this action to recover $300 as the agreed commission for securing a purchaser of a tract of land in which the defendant, J. M. Wolfard, was interested. The complaint avers that for a period of more than 20 years prior to the commencement of the action plaintiff had been engaged in the business of real estate brokerage in the city of Silverton, in the vicinity of which the land sold is situate; that about May 15, 1908, the contract of employment was made, and that on September 10th following, he procured and brought to the defendant as a purchaser one J. F. Short, who was ready, able, and willing to buy, and did buy, the land upon the terms stated by defendant at the time of plaintiff's employment.

The answer admits that plaintiff was a real estate broker during the time stated in the complaint, but denies all other allegations. At the close of plaintiff's case, defendant moved for a judgment of nonsuit, which the court denied. A verdict was thereafter returned in plaintiff's favor for the amount demanded, and, from the judgment entered thereon, defendant has appealed.

AFFIRMED.

For appellant there was a brief over the names of *Mr. Louis J. Adams* and *Mr. George G. Bingham,* with an oral argument by *Mr. Bingham.*

For respondent there was a brief over the names of *Messrs. Rauch & Seitz,* with an oral argument by *Mr. Louis E. Rauch.*

MR. JUSTICE SLATER delivered the opinion of the court.

1. Defendant's motion for a judgment of nonsuit against plaintiff is based principally upon the ground that there is no evidence tending to establish an agreement as to the amount of the commission which plaintiff was to receive. The evidence is brief, and directed mainly to the establishment of two principal points at issue—the employment of plaintiff, and the agreement as to the amount of commission to be paid. As to the first point, there is no room to question the sufficiency of the evidence to make a *prima facie* case.

2. The plaintiff testifies unequivocally that about May 11, 1906, defendant told him to secure a purchaser for the land, comprising 315.64 acres, at $27 per acre, but that nothing was said by either of them at that time regarding the amount to be paid as commission. Under such circumstances, the law implies a promise on the part of defendant to pay the usual or customary commission charged in that neighborhood for like services, if it were shown there was such a customary rate, or, if not, then the reasonable value of the services rendered would be the measure of defendant's liability.

3. One Andrew Aarhaus, an employe of plaintiff, testified that in June, 1908, the defendant called at plaintiff's office to ascertain what certain parties whom witness had taken to see the land were going to do. Plaintiff being ill, was at his home. Defendant then told witness to find out what the commission would be. Witness telephoned defendant's inquiry to plaintiff, receiving an answer that it would be $300, which witness communicated to defendant. The testimony then takes this form:

"Q. What did Mr. Wolfard say?"

"A. He said, as far as I can remember, that $150 was enough."

"Q. Did he say he wouldn't pay $300?"

"A. Not that I know of."

This is all of the conversation there was about the amount of the commission, but the evidence further shows that after this occurrence defendant called at least once at plaintiff's office to ascertain what the parties seeking to buy land thought of the place, and particularly regarding one Brown, who had been shown the property by witness Aarhaus. The parties referred to by witness as having been taken out to and shown the place did not include J. F. Short, who was afterwards obtained as a purchaser. Plaintiff also testifies that after bringing the place to Short's attention, some time in the month of September, defendant inquired of plaintiff where Short was, and being told that he was in Woodburn, defendant said to plaintiff: "Webb, I want you to use your influence the best you can to have Short buy that place." To which plaintiff testifies that he replied: "I have done that. The place is a good place, and I know that Short will buy it." Does this evidence tend to support the averment that defendant had agreed to pay the plaintiff the sum of $300 as a commission? It is clear that he did not expressly do so, but that he impliedly assented thereto by seeking and accepting plaintiff's services after having been informed of the price seems to us to be clear. While plaintiff was seeking a buyer, and before any agreement as to the compensation was made, defendant by his inquiry manifested a desire to have some amount agreed upon. When informed by plaintiff the amount that would be charged for his services, if the sum was not satisfactory to the defendant, the latter was at liberty to reject the proposal, for it must be considered to be such, and to terminate his contractual relations theretofore existing. Plaintiff was not bound to proceed in any event, but might have ceased his efforts had defendant notified him that he would not pay the amount demanded. But when he continued in his efforts to secure a buyer at the special instance and request of defendant, after the latter had knowledge of the amount

that he intended to charge, as unquestionably shown by the evidence, and without any positive refusal on the part of the defendant to pay the sum named, it must, we think, be held that defendant by directing plaintiff to proceed thereby necessarily accepted the terms thereof. It is the universal rule that an offer must be accepted before it becomes a binding promise and results in a contract; but on the other hand, when an acceptance is made, it must be identical with the terms of the offer, and, unless it contains some express limitation, it includes all of the terms of the offer. The defendant could not expect to enjoy the fruits of plaintiff's labor, with a mental reservation that he would not pay the price asked when the offer was made, but a less sum. If he accepts at all, it must be upon the terms named. Had defendant before accepting plaintiff's services positively declined to pay the amount demanded, in case a buyer was brought to him, the matter would have been left open upon *quantum meruit*, for the law will not imply the promise of any person against his expressed declaration, because such declaration is repugnant to any implication of a promise. 2 Wharton, Contracts, § 707; *Lamson, Consol. Store-Service Co.* v. *Weil*, 8 N. Y. Supp. 336. The evidence was sufficient to go to the jury upon the question of agreed price, and there was no error in denying the nonsuit.

4. On cross-examination plaintiff was asked if he did not know that defendant was not the owner of that place, to which question an objection was sustained as not proper cross-examination, and error predicated thereon. The matter inquired about was not material or pertinent to anything testified to by plaintiff on his direct examination, and there was no error in excluding the inquiry.

5. J. F. Short testified that he first learned of the place through plaintiff; that he went to look at it, and afterwards purchased it through defendant, agreeing to pay $27 per acre. On cross-examination he was asked if he

had not purchased the farm at a referee's sale at the court house. This was held to be immaterial, and was excluded. Defendant was permitted upon his defense, however, to show that the land in question had formerly belonged to his father and mother in their lifetime, and since their death to their heirs; that suit was instituted to partition the land; that it was sold at a referee's sale; and that J. F. Short bought the land at such sale, but an offer by the defendant of the decree and the referee's report in such suit was rejected. There was no error in any of these rulings. The action was based upon defendant's personal agreement to pay plaintiff for securing a purchaser for the land. It was not material to the inquiry as to what particular interest the several heirs had in the land, or as to how or in what manner the sale was consummated, or whether, in fact, it was consummated at all, excepting so far as the latter tended to show that Short was ready, able and willing to purchase. *Kyle* v. *Rippey,* 20 Or. 446 (26 Pac. 308.)

6. In any event, the decree and referee's report in a partition suit would not be competent as against plaintiff, because he was not a party to such proceedings. It was material, however, to show that plaintiff had a limited or no interest in the land as bearing upon the probability of his having made the contract with plaintiff under the circumstances surrounding the case, and to that extent the defendant was permitted to offer his evidence. *Moore* v. *Daiber,* 92 Mich. 402 (52 N. W. 742.)

7. The court instructed the jury, in substance, that if they found from the evidence that defendant placed the property in plaintiff's hands for sale, and that defendant was acting as agent for another person or other persons, but failed to disclose such agency to the plaintiff, he was as personally bound by his contract as if he were the principal in fact. Exception thereto was taken. Defendant's counsel does not question the accuracy of the prin-

ciple of law thus announced, but claims that it is inapplicable to the facts of the case. There was evidence, however, which made the instruction proper. On direct examination an inquiry directed to plaintiff, as to whether anything was said to him about defendant being administrator of his father's estate, was prefaced by the statement: "In regard to the administration of the estate the defense states the land belonged to the father of defendant." This statement doubtless had reference to something said by counsel for defendant in his opening statement to the jury, as to what would be the nature of the defense, as it is not in the answer. Plaintiff testified that he never knew defendant was administrator, or that, when hiring him, defendant was acting in that capacity. Plaintiff also testifies that when he requested defendant to pay his commission the latter said that the heirs would not pay anything, but that he would give him $25. On the other hand, defendant was permitted to show that the heirs of his father and mother were the owners of the land, and that in dealing with Short he told him he could not make a binding contract without consulting them, and that he had no authority to sell the place without consulting the heirs and the court. While the question of agency was not directly in issue, we think it was suggested by the defense, and the evidence offered tends to support the suggestion to such an extent that the instruction given was proper.

Finding no error in the record, the judgment is affirmed.          AFFIRMED.