Argued April 4, decided April 23, rehearing denied June 4, 1912.

## ELY *v.* WILDE.

[122 Pac. 1122.]

BROKERS—ACTION FOR COMPENSATION—PROOF VARIANCE.

1. In an action for compensation due under a contract to sell bonds on commission, the complaint set out one contract for the sale of bonds, and the evidence established that there were two. *Held* that, as defendant might, by motion have compelled plaintiff to make an election, or might have denied the contracts as set up, the variance was not so material as to prevent plaintiff's recovery.

BROKERS—CONTRACT OF EMPLOYMENT—CONSTRUCTION.

2. Defendant engaged plaintiff to sell on commission the bonds of one telephone company, and later agreed with him to sell the bonds of

another. *Held,* that the later agreement was not a new contract, but merely an enlargement of the plaintiff's powers under the first.

BROKERS—COMPENSATION—DEFENSE.

3. Where plaintiff was engaged to sell bonds on commission, the act of defendant in releasing a purchaser from a valid contract to take bonds does not affect plaintiff's right to the commission, though the purchaser asserted the invalidity of his contract; the defendant releasing purchasers at his own risk.

APPEAL AND ERROR—REVIEW—FINDINGS.

4. The finding of the circuit court sitting as a jury when supported by evidence is conclusive on appeal.

BROKERS—COMPENSATION—RIGHT TO COMPENSATION.

5. Where a broker engaged to sell bonds on commission, at the request of his principal, permitted another person to consummate a sale, although he had first interested the buyer, the broker was not entitled to recover the commission on such sale, for a broker cannot recover a commission until he furnishes his principal with a valid and enforceable contract, or produces a purchaser ready, willing, and able to buy.

BROKERS—COMMISSIONS—PERSONS LIABLE.

6. In an action by one engaged to sell bonds on a commission, evidence that a person other than the defendant owned the bonds was immaterial; it appearing that the defendant had made the contract of employment.

APPEAL AND ERROR—DISPOSITION—AFFIRMANCE IN PART—REMITTITUR.

7. Where the amount erroneously allowed in an action on a contract is certain, the appellate court may affirm the judgment on condition that plaintiff enter a remittitur for that amount.

From Multnomah: EARL C. BRONAUGH, Judge.

Statement by MR. JUSTICE MCBRIDE.

This is an action by Ben C. Ely against Louis J. Wilde to recover for commissions alleged to have been earned under a contract to sell for defendant the bonds and stock of certain telephone corporations. It is stated in the complaint that defendant in October, 1906, was engaged in the business of selling, in Portland, Oregon, and elsewhere, the bonds and stocks of the Home Telephone & Telegraph Company of Portland, the Puget Sound Home Telephone Company of the state of Washington, and the bonds and stocks of other corporations; that at that time defendant employed plaintiff to act as

his agent in the sale of such bonds and stocks, and agreed
to pay him in the following manner: (1) Where bonds
were sold and a stock bonus of more than 50 per cent.
was given, plaintiff was to receive 5 per cent of the total
amount of cash agreed by the purchaser to be paid for
the bonds and stocks, which 5 per cent was to be paid
out of the first cash paid by the purchaser. (2) In
sales of bonds where only a 50 per cent stock bonus
was given the purchaser, plaintiff was to receive 5 per
cent commission and a 12½ per cent commission in
stock of the company issuing the bonds. Plaintiff alleges
that he effected the following sales: (1) Bonds worth
$20,000 of the Puget Sound Telephone Company to P. L.
Willis for the agreed price of $20,000, with a stock bonus
of $15,000, of which $4,000 was paid in cash, and that
upon this sale plaintiff was entitled to a commission of
$1,000; (2) bonds worth $10,000 of the same company
to the Bank of Tacoma, Wash., with a $7,500 bonus,
upon which sale more than $1,000 in cash has been paid
and the stocks and bonds delivered, and that plaintiff is
entitled to $500 commission; (3) bonds worth $5,000 par
value of the Home Telephone & Telegraph Company of
Portland, Oregon, to K. A. J. MacKenzie, with a stock
bonus of $2,500, for the sum of $5,000, which has been
paid and the stocks and bonds delivered; and (4) bonds
worth $1,000 par value of the Home Telephone & Tele-
graph Company of Portland, Oregon, to M. Meagher,
with $500 bonus, upon which sales plaintiff is entitled to
$300 in cash and $750 par value in stock, and that the
stock is of the value of $337.50, and that delivery thereof
has been demanded and refused. There was an addi-
tional cause of action for labor and services, but the
court found for defendant on this issue, and it need not
be further considered. The cause was put at issue by a
general denial, and was tried by the court without a jury.
There was a finding for plaintiff upon all the items

alleged, except the sale to Meagher, and a judgment against defendant accordingly. Defendant appeals.

AFFIRMED CONDITIONALLY: REHEARING DENIED.

For appellant there was a brief over the names of Messrs. *Wilson & Neal* and *Mr. Joel M. Long,* with an oral argument by *Mr. A. King Wilson.*

For respondent there was a brief over the names of *Mr. J. N. Brown and Mr. Frank F. Freeman,* with an oral argument by *Mr. Brown.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

The evidence tends to show that in July, 1906, plaintiff was employed by defendant to sell bonds of the Home Telephone & Telegraph Company of Portland at a net commission of 5 per cent and a stock commission of 5 per cent where the stock bonus allowed the purchaser did not exceed 50 per cent of the par value of bonds sold. In October of the same year his employment was extended so as to include bonds in the Puget Sound Home Telephone Company. Plaintiff declared on one contract, as shown in the statement, and it is claimed that the evidence discloses two distinct contracts, made at different times, and that the court should have required the defendant to elect upon which he would rely for a recovery, and that the proof offered constituted such a material variance from the pleading that plaintiff should not have been permitted to recover. In our view of the case it is not material whether the later contract should be treated as a mere oral amendment to the original contract or as a separate agreement. In either case it was defendant's privilege to have denied the contract set up and to have pled his version of it, or to have moved the court to compel plaintiff to elect which cause of action he would rely upon.

2. Defendant denied having any contract with plain-

tiff or that any services had been rendered by plaintiff. He did not move the court to compel plaintiff to elect upon which branch of his case he would rely. At the close of plaintiff's testimony, counsel for defendant made the following motion:

"I move at this time that the court disregard all testimony in relation to the MacKenzie deal pleaded in the complaint, because it has been shown by the testimony of the plaintiff that it was on a contract which has not been pleaded at all. I would like to reverse that by making the same motion as to the Willis and Scandinavian deal. He said he had two contracts, and the testimony shows they had. One was in regard to sale of Home Telephone Company bonds and one in regard to the sale of Puget Sound Telephone Company bonds, and, if they had two contracts, he must have set them up and cannot recover upon one contract in this suit."

*Ross* v. *Jones,* 47 S. C. 211 (25 S. E. 59); *High* v. *Southern Pac. Co.,* 49 Or. 98 (88 Pac. 961). But, in substance, there was only one contract in existence at the time the bonds were sold by plaintiff. Defendant was dealing in the bonds of two corporations. In July he employed plaintiff to sell the bonds of one of these, and in October he made an agreement with him to sell bonds of the other, and all these sales took place after the October agreement. The general agreement was merely an enlargement of plaintiff's powers and duties, and, instead of being a new contract, it was a new term added to the former one. It is clear that defendant was not misled by the form of pleading adopted.

3. The evidence tends to show that plaintiff entered into a valid contract for the sale of $5,000 worth of bonds to Dr. MacKenzie, and received $2,500 in cash upon it, and was entitled to a stock commission of six shares, which were worth about $270. After having procured such contract and collected one-half of the purchase price, defendant, without any apparent legal

necessity therefor, released MacKenzie, and returned him the money paid. It is true that he states that MacKenzie declined to make further payments, and claims that false representations had been made to induce him to enter into the contract, but there is no evidence that this claim was well founded, and if defendant, after plaintiff had earned his commissions under the terms of the contract, saw fit to rescind, he did so at his own risk.

4. There is some evidence tending to support plaintiff's contention as to the Willis sale, and we are therefore bound by the findings of the circuit court.

5. We do not think plaintiff's evidence shows a complete sale to the Scandinavian Bank. Plaintiff introduced in evidence a letter from the cashier, the material portion of which is as follows:

"As to the matter of this institution taking some of the bonds, I think that can be arranged, provided we can get the telephone company's account. I may run over to Portland one day this week, and, if you are going to be in the city, I may find time to discuss the proposition more fully."

Later the secretary of the telephone company wrote to plaintiff that he had made arrangements for an account at the Scandinavian Bank. Nothing more appears to have been done, and while matters were in this situation defendant stated to plaintiff that Mr. Morris of the Oregon Trust & Savings Bank was a stockholder in the Scandinavian Bank, and asked plaintiff to let him "pass the deal with the Scandinavian Bank up to Morris," as he thought Morris could sell them more than $10,000 worth of bonds. To this plaintiff assented, and Morris sold the bank $25,000 worth of bonds. There was no positive agreement to purchase on the part of the bank when plaintiff ceased his efforts. He had succeeded in getting the cashier to say that, under certain circumstances, he thought a sale could be arranged, and there

he left the matter. We have so often stated that, in order to enable a broker to recover commission, he must either furnish his principal with a valid and enforceable contract to purchase or produce a purchaser ready, willing, and able to buy, that it is needless to again cite authorities on that point. Here there was no contract signed and no agreement to buy, and if plaintiff, to oblige Wilde, ceased his efforts before a sale was effected, he cannot recover upon a complaint alleging full performance.

6. Error is also assigned by reason of the refusal of the court to permit cross-examination of plaintiff as to who was the owner of the securities he was selling. The inquiry was immaterial. If defendant employed plaintiff to make the sales and agreed to pay him a commission, it would not matter whether he was the owner of the bonds or merely an agent for their sale.

7. The conclusion reached in regard to the sale to the Scindinavian Bank would necessitate a reversal of the judgment but for the fact that the amount of that claim is definite and severable from the remainder of the judgment. Following the rule announced in *Gardner* v. *Kinney,* 60 Or. 292 (117 Pac. 971), and cases there cited, we will affirm the judgment on condition that plaintiff, within 30 days from this date, expressly remit the amount included in the finding as to the sale to the Scindinavian Bank.

In case of failure to do this, the judgment will be reversed, and a new trial ordered.

AFFIRMED CONDITIONALLY.

REHEARING DENIED.