[No. 18152.  Department One.  December 15, 1923.]

DIRK VAN WOERDEN *et al., Respondents,* v. PUGET
SOUND ELECTRIC RAILWAY, *Appellant.*[1]

RAILROADS (96)—INJURY TO ANIMALS ON TRACK—NEGLIGENCE—
GATE AT PRIVATE CROSSING—EVIDENCE—SUFFICIENCY.  Where a rail-
road uses a gate at a private crossing for its own use, or permits
such use, it assumes the responsibility of seeing that it is kept
properly closed.

Appeal from a judgment of the superior court for
King county, Hall, J., entered March 15, 1923, upon
the verdict of a jury rendered in favor of the plain-
tiffs, in an action in tort.  Affirmed.

*James B. Howe* and *Hugh A. Tait,* for appellant.

*Ryan & Desmond* and *Wesley J. Mifflin,* for respond-
ents.

TOLMAN, J.—This action was instituted by respond-
ents, as plaintiffs, to recover for the killing and maim-
ing of thirteen head of cattle while upon the defend-
ant's right-of-way near Georgetown, in King county,
Washington.  From a verdict and judgment thereon
against it in the sum of $1,900, the defendant has
appealed.

Appellant is the owner and operator of an electric
railway line between Seattle and Tacoma, which passes
over a private right-of-way through lands leased by
respondents and occupied by them as a dairy farm.
This right-of-way is fenced on both sides and runs
practically north and south through the lands occupied
by respondents, about 240 feet east of, and parallel
with, the Pacific Highway.  Respondents' farm house
and barns are west of the highway, and the cattle were

[1]Reported in 221 Pac. 591.

pastured on lands lying east of and adjacent to the right-of-way. A fenced cattle lane, about forty feet wide, leads from the easterly side of the highway 240 feet to the westerly side of the right-of-way. Reaching that point, the lane turns at a right angle in a southerly direction and extends along the right-of-way about six hundred feet to an underneath crossing, where it passes under appellant's track and opens into the pasture. At the point where the lane turns at a right angle, there is a private farm crossing over the right-of-way and track of appellant, shut off from the cattle lane by a gate. The whole controversy centers upon this gate.

On the afternoon of September 14, 1922, according to regular custom, respondents milch cows were driven from the pasture through the under crossing and lane, past the gate which was then closed, and onto and across the highway and into respondents' barns, where they were stabled, milked, and early next morning returned to the lane at the point where it opens off the highway, and there left, also according to regular custom, to find their way down the lane, past the gate and on into the pasture. The morning was foggy and the man who turned the cattle into the lane could not see as far as the gate at the turn in the lane. It now appears that, at the time the cattle were so turned back into the lane, the gate was open and the cattle, or some of them, passed through the gate and onto the appellant's right-of-way and track, and there received the injuries complained of, either from a passing train or an electrically charged third rail, or some from one and some from the other.

The chief points raised by appellant center upon the question of who opened the gate, it being contended that, having fenced the right-of-way as required by law, and placed gates in the fences for the use and

benefit of adjoining landowners, its duty was fully performed, and the duty to keep the gates closed rested upon the landowner or his tenants. Generally speaking, that may be a sound rule, although the authorities differ, and we do not now so determine; but manifestly it has no application if appellant used the gate for its own purposes and opened it, or, without opening it, left it open after such use. In 1 R. C. L. 1185, after stating the general rule to be as above, it is said:

"Obviously where a railroad uses a gate to a private crossing for its own purposes, or permits such use, it assumes the responsibility of seeing that the gate is kept properly closed. This rule is applicable not only to the acts of its agents and servants but to those of all persons acting with its sanction or permission."

This exception to the general rule, if it be a general rule, seems to be established by the great weight of authority. Elliott on Railroads (3d ed.), § 1716; 33 Cyc. 1209; *High v. Southern Pacific Co.*, 49 Ore. 98, 88 Pac. 961; *Baltimore & O. S. W. R. Co. v. Zollman*, 40 Ind. App. 233, 80 N. E. 40. This being the law, there was ample evidence as disclosed by the record to go to the jury justifying it in finding that appellant, through its servants, for purposes connected with their employment, opened and negligently left open the gate, and with such proof before the jury there was no occasion for either allegation or proof of the negligent operation of the train which struck the cattle, or that the third rail, with which they, or some of them, came in contact was negligently maintained, nor of proof as to which of these was the fatal agency. Neither do we find, after a careful examination, that the proof of contributory negligence on the part of respondents in not ascertaining that the gate was closed when the cattle were turned back into the lane

was of such a nature as to constitute contributory negligence as a matter of law.

The trial court, in the giving and refusal to give instructions to the jury, conformed exactly to the law as we have herein defined it to be, and therefore there was no error committed with respect thereto.

The judgment appealed from is affirmed.

MAIN, C. J., HOLCOMB, PARKER, and MACKINTOSH, JJ., concur.