Argued March 17, reversed and remanded May 11, petition for
rehearing denied July 5, 1960

# BRADY *v.* EAST PORTLAND SHEET METAL
# WORKS ET AL AND KASCH

352 P. 2d 144

*Donald H. Joyce,* Portland, argued the cause and filed the brief for appellant.

*Denton G. Burdick, Jr.,* Portland, argued the cause for respondent. With him on the brief were Hutchinson, Schwab & Burdick, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY and DUNCAN, Justices.

ROSSMAN, J.

This is an appeal by the defendant H. L. Kasch from a judgment in the sum of $3,800 which the circuit court entered against him and in favor of the plaintiff, Cora Brady, a licensed real estate broker. This is, likewise, a cross-appeal by the plaintiff from the same judgment based upon a contention by the plaintiff (cross-appellant) that the amount of the judgment should have been $6,250. The action out of which the challenged judgment arose was based upon a written exclusive listing agreement, signed by the parties May 11, 1956, which gave the plaintiff until July 11, 1956, the right to sell for the sum of $150,000 the real and personal property which is described in the writing. The latter states that in the event of a sale the defendant would pay to the plaintiff "the usual real estate commission as set by the Portland Realty Board." According to the plaintiff, the defendant, prior to July 11, 1956, entered into a long term lease which described much of the property mentioned in the agreement and he thereby breached the agreement of May 11, 1956, by rendering it impossible to comply with his agreement with the plaintiff.

The complaint named as defendant not only Kasch but also two corporations, East Portland Sheet Metal Works and North Coast Manufacturing Company. But, since neither of those entities signed the agreement upon which this action is predicated, the circuit court

dismissed the action as to them. No one challenges that ruling. Hereafter, when we use the term defendant we will mean Kasch.

The items of property which are described in the agreement of May 11, 1956, are two parcels of real property situated in Portland, two commercial buildings which stand upon the real property just mentioned, some accounts receivable, machinery, equipment, tools, raw materials and work in progress. The two corporations, East Portland Sheet Metal Works and North Coast Manufacturing Company, occupied the two buildings and part of the real property. The two corporations were engaged in the manufacture of products such as furnaces, gutters and downspouts.

Since the defendant states frequently that he did not own all of the real property described in the agreement dated May 11, we take note of the following facts. The defendant testified that he owned one of the two parcels of real property which we infer was a large tract. He testified that the other parcel, consisting of lots, was owned by the North Coast Manufacturing Company. In other testimony, wherein he referred to the lots, he stated that "part of the lots were in the name of the North Coast Manufacturing Company and the rest in the name" of Mr. Joyce, the attorney who represents the defendants. The defendant was the president of North Coast Manufacturing Company and owned the majority of its stock. According to him, he controlled the stock of the East Portland Sheet Metal Works "directly or indirectly," and if the plaintiff had produced a purchaser in accordance with the agreement of May 11 he (defendant Kasch) would have been able to convey all of the property to the purchaser.

Although the complaint does not signify with the clarity that is desirable the theory upon which it is

based, no issue arose during the trial upon that score. The trial judge interpreted the complaint as charging the defendant with a breach of the agreement and a demand for the resulting damages. For example, the trial judge, referring to the defendant Kasch, stated in a memorandum opinion which is unusually good:

"* * * I feel that under authority of Torrey and Dean versus Coyle, et al, 138 Oregon 509, he is liable for damages.

*       *       *

"This entitled the plaintiff to recover against the defendant, Kasch, but I am frankly somewhat puzzled over the measure of damages. * * *"

The defendant does not challenge that interpretation of the complaint and we believe that it is a reasonable one.

The first assignment of error states:

"The trial court erred in finding as a fact that the defendant H. L. Kasch was the owner of any real property, other than a three acre tract adjacent to Southeast 92nd Avenue, Portland * * *."

The defendant does not contend that the plaintiff was aware of the state of the record title to the property when the agreement of May 11 was signed. It will be noticed, however, that the defendant avowed ability to convey title in the event that a conveyance was necessary. We think that the answer to the contention submitted by the above quoted assignment of error is given by the following passage which we take from *Ely v. Wilde,* 62 Or 111, 122 P 1122:

"* * * If defendant employed plaintiff to make the sales and agreed to pay him a commission, it would not matter whether he was the owner of the bonds or merely an agent for their sale."

See, to the same effect, *Webb v. Wolfard,* 56 Or 394, 108 P 1005. We dismiss this assignment of error as lacking in merit.

The second assignment of error follows:

"The Court erred in finding as a fact that the lease admitted into evidence as Plaintiff's Exhibit 3 was a binding long term lease that rendered performance by the plaintiff impossible."

The challenged finding of fact reads:

"On or about June 14, 1956, and within the exclusive listing period, defendant H. L. Kasch entered into a binding long-term lease covering a substantial portion of said real property and placed a lessee in possession thereof. On or about the same date arrangements were made by the defendant North Coast Manufacturing Co. for the sale of the personal property covered by said listing contract to the said lessee of said real property. The foregoing put it out of the power of defendant Kasch to effectively complete a sale upon the terms and conditions as set forth in said listing contract and rendered the performance thereof by plaintiff impossible."

In his memorandum opinion the trial judge stated:

"* * * I find that while the defendant Kasch did not technically sell the real property, he did on June 14, 1956 (Plaintiff's Exhibit 3), entered into a long term lease on much of it, and put the lessee in possession. This and other documents executed within the sixty-day listing period, put it out of his power to effectively complete a sale, except subject to the lease, and would have prevented a purchaser secured by the plaintiff from going into possession for a long period of time, and did, in my opinion, render performance under the listing contract impossible."

We take the following from ORS 17.435:

"The finding of the court upon the facts shall be deemed a verdict * * *."

Since the finding just quoted is supported by substantial, competent evidence we are bound by it. The defendant's (appellant's) brief says: "If the lease were properly put in issue by the pleadings in this cause" its legal effect "would in any event be a conclusion of law, rather than a finding of fact." We know of no merit to that contention. In our belief, assignment of error No. 2 is without merit.

Assignment of error No. 3 reads as follows:

"The Court erred in finding as a fact that the plaintiff did within the 60 day exclusive listing period produce a buyer ready, willing and able to purchase all of the properties listed in the listing contract for cash at the listed price, and the defendant H. L. Kasch refused to negotiate with plaintiff's buyer."

We have mentioned the fact that before the sixty-day period had expired the defendant leased to another the major part of the property covered by the agreement of May 11 and thereby rendered it impossible for him to comply with that agreement. Therefore, we do not believe that it was incumbent upon the plaintiff to produce a buyer ready, willing and able to purchase although it was essential for her to show, as will subsequently appear, that she probably would have sold the property. The findings of fact state:

"Plaintiff did, within the 60-day exclusive listing period, produce a buyer ready, willing and able to purchase all of the properties listed in the said listing contract for cash at the agreed and listed price. Defendant H. L. Kasch refused to negotiate with plaintiff's buyer."

The trial judge's memorandum opinion states:

"As regards the contention that the plaintiff did not procure a purchaser, I am not sure that it was necessary under the circumstances for her to do so in view of the fact that the defendant, Kasch, had in effect repudiated the contract. However, it appears from the evidence that she did procure a purchaser, Mr. Robert Coates, who testified that he was prepared to complete the purchase for cash if necessary, and the evidence appears clear that he was financially able to do so.

"I therefore find in favor of the plaintiff on this issue, if it were determined to be necessary for her to procure a purchaser."

We have read the testimony with care and believe that it supports the finding and memorandum opinion.

■ The following is the fourth assignment of error:

"The Court on the examination of witness, Robert Coates, erred in failing to sustain the objection of the plaintiff to the following question (Tr. 55):

"'Q. Mr. Coates, would you have been willing to purchase the property for $150,000.00?'"

At that point the defendant objected:

"* * * whether he is willing to offer to purchase property for $150,000.00, proof should be in writing, such as a written offer."

In his brief the defendant argues:

"Where an agreement is within the statute of frauds, parole testimony concerning the same is not admissible."

This is not an instance in which a real estate broker contends that he performed an agreement and now seeks to recover the contract sum. In this case the plaintiff showed that the defendant repudiated the

agreement shortly after the parties signed it and then, by executing a long term lease, rendered it impossible for him (the defendant) to comply with the contract. It is clear that before July 11 the defendant leased much of the property to a third party. He himself conceded that before the lease was consummated he told the plaintiff of his plans. For instance, he testified: "We had discussed that I had another prospect that I would like to go through with."

*Anderson v. Wallowa National Bank,* 100 Or 679, 198 P 560, was concerned with a somewhat similar situation. In that case the plaintiff, a real estate agent, claimed that the defendant, owner of the property, told the plaintiff's prospective purchaser, Mr. Morrow, that the defendant would do nothing about the property until after June 1st. The plaintiff's right to sell the property under the terms of the listing agreement was scheduled to expire June 1. We now quote from the decision:

"* * * The payment or offer to pay is excused, however, if the defendants refused to receive the money or refused in advance to perform the contract. There was testimony, as already intimated, contested it is true by the defendants, to the effect that they told Morrow when he announced to them that he was ready to close the deal, that nothing could be done until after June 1st. This was sufficient to dispense with an actual offer to pay the money. No one is required to do a vain thing, and, if the defendants would not do anything until after June 1st, the tender was excused. * * *

* * *

"* * * the plaintiff was excused from further prosecution of the process of effecting a completed sale of the property by the fact which the jury was authorized to find from the evidence, that the defendants refused to execute a deed to the land until after June 1st."

We find no merit in the fourth assignment of error.

The fifth assignment of error, being the last, reads:

"The trial court erred in finding and entering a judgment against appellant in any amount."

The defendant-appellant argues:

"A memorandum which does not express a consideration or the execution thereof running from the promisee to the promisor is void."

The defendant contends that the agreement upon which this action is based does not express a consideration and is, therefore, void.

ORS 41.580 says:

"In the following cases the agreement is void unless it, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents in the cases prescribed by law:

* * *

"(7) An agreement authorizing or employing an agent or broker to sell or purchase real estate for a compensation or commission; but if the note or memorandum of the agreement is in writing and subscribed by the party to be charged, or by his lawfully authorized agent, and contains a description of the property sufficient for identification, and authorizes or employs the agent or broker to sell the property, and expresses with reasonable certainty the amount of the commission or compensation to be paid, the agreement shall not be void for failure to state a consideration."

■ It is our belief that the agreement of May 11, 1956, even if it does not express the consideration, meets the terms of the proviso (*Sherwood v. Gerking,*

209 Or 493, 306 P2d 386) which is found in ORS 41.580 (7) just quoted. This assignment of error, therefore, is without merit.

The foregoing disposes of all of the defendant's (appellant's) assignments of error. They have disclosed no error in the challenged judgment.

The plaintiff (respondent), in cross-appealing, argues that when the trial judge entered judgment for the plaintiff in the sum of $3,800 only he mistook the measure of damages.

It will be recalled that the agreement of May 11 provides that in the event of a sale the defendant will pay to the plaintiff "the usual real estate commission as set by the Portland Realty Board." The unchallenged and uncontradicted testimony given by the plaintiff indicates that in the period germane to this case the rate of commission fixed by the Portland Realty Board "is five per cent on the first $100,000.00, and two and one-half per cent above that."

Restatement of the Law, Agency 2d, § 450, states:

"A principal has a duty not to repudiate or terminate the employment in violation of the contract of employment."

Restatement of the Law, Agency 2d, § 455, declares:

"If in violation of the contract of employment, the principal terminates or repudiates the employment, or the agent properly terminates it because of breach of contract by the principal, the agent is entitled at his election to receive either:

"(a) the amount of the net losses caused and gains prevented by the principal's breach or, if there are no such losses or gains, a small sum as nominal damages; or"

Comment (d) accompanying § 449, Restatement of the Law, Agency 2d, includes the following:

"* * * The contract may, however, be inter-

preted as including only a promise that the principal will not employ another agent or will not accomplish the result himself, in which case the agent is entitled only to damages for the breach of promise by the principal. In this case, the agent is entitled to the amount promised for performance, diminished by any expense he would have had in accomplishing the result, and he is entitled to this only if he can show that there was a probability that he would accomplish the result."

The following authorities, in dealing with cases substantially similar to the one before us, employed rules of damage consonant with the language just quoted: *Fleming v. Dolfin,* 214 Cal 269, 4 P2d 776; *Lowe v. Loyd,* 93 Cal App 2d 684, 209 P2d 851; *Harris v. McPherson,* 97 Conn 164, 115 A 723, 24 ALR 1530; *Murphy v. Sawyer,* 152 Ky 645, 153 SW 991; *Carter v. Hall,* 191 Ky 75, 229 SW 132; *Staats v. Mangelsen,* 105 Neb 282, 180 NW 78; *Calkins v. Yeshoit,* 142 Neb 788, 7 NW2d 715; *Park v. Swartz,* 110 Tex 564, 222 SW 156.

■ We believe that the circuit court erred in awarding the plaintiff only $3,800 damages. It should have awarded $6,250. The cause is remanded to the circuit court with instructions to enter judgment in the plaintiff's favor in the sum of $6,250.

Reversed and remanded.

DUNCAN, J., specially concurring.

The action arose out of a listing agreement in writing whereby defendant Kasch gave to plaintiff for a specified period the exclusive right to sell real and personal property. The agreed commission for performance by plaintiff was that provided by Portland Realty Board rules. During the exclusive period defendant disposed of a portion of the listed property,

thereby preventing plaintiff from performing. When informed by defendant that he was going to otherwise dispose of the property, plaintiff terminated her efforts under the agreement without having procured a buyer ready, willing and able to purchase. A party repudiating a contract made with another for services to be performed by the other and refusing longer to be bound by its terms, the injured party has an election to pursue one of three remedies as follows:

" 'He may treat the contract as rescinded, and recover upon *quantum meruit* so far as he has performed; or (2) he may keep the contract alive for the benefit of both parties, being at all times himself ready and able to perform, and at the end of the time specified in the contract for performance, sue and recover under the contract; or (3) he may treat the repudiation as putting an end to the contract for all purposes of performance, and sue for the profits he would have realized if he had not been prevented from performing.' *Krebs Hop Co. v. Livesley,* 59 Or. 574, 579 (114 Pac. 944, 118 Pac. 165, Ann. Cas. 1913C, 758." *Jacobberger v. School District No. 1,* 122 Or 124, 256 P 652.

Plaintiff elected to seek her remedy under option (1) for services rendered, as appears by paragraph IV of her complaint as follows:

"Alleges that prior to July 10, 1956, the exact date being to the plaintiff unknown, defendants, in violation of the terms of the said exclusive listing agreement, sold or agreed to sell, all or a substantial portion of the property described in said listing agreement and by virtue thereof defendants became indebted to plaintiff in the sum of $7500.00 for services, work and labor performed and done by plaintiff as a real estate broker for defendants at their special instance and request."

At the trial plaintiff contended the action to be one for damages for breach so as to entitle her to recover

an amount equal to the agreed commission. This position would have been well taken had she elected to proceed under option (3), but she made no effort to amend her complaint accordingly.

The trial court found that within the period of the exclusive listing plaintiff had produced a buyer ready, willing and able to purchase the listed property. The evidence failed to support this finding, and defendant took appropriate exception to that finding and raised the objection on appeal.

Had plaintiff performed the contract by finding such a buyer, then even though she brought her action in *quantum meruit,* her recovery would have been measured by the commission contracted for; but inasmuch as the contract remained executory, her recovery was limited to the reasonable value of services actually rendered. This was all she sought by her complaint.

Because the evidence is insufficient on which to find the reasonable value of her services actually rendered, the case should be returned to the trial court to permit plaintiff to offer evidence of the value of those services. This procedure is pursuant to the holding in *Brown v. Bonesteele,* 218 Or 312, 344 P2d 928.