Argued March 21; affirmed April 11, 1933

# ARNETT *v.* SCHERER

(20 P. (2d) 803)

B. G. *Skulason* and *J. Kenneth Kaseberg,* both of Portland, for appellant.

*Irving Rand,* of Portland (A. A. Smith, of Baker, on the brief), for respondent.

CAMPBELL, J. This is an action to recover a sum of money as a commission for procuring a purchaser for certain shares of corporation stock.

The complaint alleges in effect, that the defendant was the owner of, or had control of the stock of a corporation that owned a marble quarry in Alaska; that she employed plaintiff early in the year of 1927 to obtain a buyer for this stock and agreed to pay plaintiff 10 per cent commission on the amount realized on the sale thereof; that plaintiff found a buyer to whom defendant sold the said stock for the sum of $40,000. Judgment is prayed for in the sum of $4,000.

To this complaint, the defendant filed a general denial and on these issues the cause was tried to a jury which returned a verdict for plaintiff in the sum of $4,000 upon which judgment was entered. Defendant appeals.

The parties to this litigation are women. It appears that in February 1927, at the instance of plaintiff, a Mr. T. C. Bloomer became interested in the sale proposition of defendant and after some negotiation

he, by letter dated March 9, 1927, definitely informed defendant that "the proposition, as outlined by you, does not appeal to me", and terminated the negotiations. Sometime thereafter, he again became interested in the purchase of the stock and on August 15, 1927, bought the stock that plaintiff had been authorized to sell, for the sum of $40,000. $15,000 was in cash, and the balance, $25,000, secured by a note of said T. C. Bloomer.

The contention between the parties is, was plaintiff the active procuring cause of having T. C. Bloomer consummate the transaction?

It is admitted that plaintiff first interested Mr. Bloomer in the proposition and brought him in contact with defendant. Plaintiff's testimony tends to show that after March 9, 1927, she again took the matter up with Mr. Bloomer and assisted defendant in removing the obstacles in the way of the purchase by him, and that she continued actively in keeping up his interest until the sale was consummated.

Defendant's testimony tends to dispute this evidence of plaintiff, therefore it was a matter for the jury to determine under proper instructions.

1. The morning of the trial, plaintiff moved for permission to file an amended complaint, which was allowed over defendant's objection. This action on the part of the court is assigned as error.

The original complaint, to which defendant filed a general denial, was for a commission for the sale of real estate. The amended complaint was for a commission for the sale of the controlling stock in a corporation that owned the real estate referred to in the original complaint. The defendant did not request a continuance, but expressed a desire to go to trial imme-

diately on the amended complaint. It was stipulated that the answer to the original complaint be allowed to stand as the answer to the amended complaint.

The cause of action in the amended complaint was germane to the cause in the original and the amendment in no way affected any substantial right of defendant. The amended and original complaints each stated a cause of action for the same commission growing out of the same contract. The cause of action, set up in both complaints, was the commission on the sale of a marble quarry in Alaska. Whether this sale was consummated directly or indirectly could not prejudice the rights of defendant. The court did not abuse his discretion in permitting the amended complaint to be filed. Oregon Code 1930, § 1-906, and see the numerous Oregon decisions cited thereunder.

2. This assignment of error is based on the court permitting certain cross-examination of defendant and on the court's refusal to strike out certain testimony of a witness who contradicted the testimony elicited on cross-examination objected to.

In the trial of the case, defendant claimed that at a certain date, she and Mr. Bloomer had completed their deal and executed their contract of sale, and that the stock of the company was no longer on the market. It appears that plaintiff was not advised of this fact and after that date sent a Mr. Hampton to interview defendant in the interest of a prospective purchaser. On cross-examination of defendant, she was asked if she did not have an interview with Mr. Hampton. Defendant denied ever having seen Mr. Hampton or having had any conversation with him.

"Q. Well, after you returned from Alaska, didn't Mr. Hampton call upon you?

"A. I have never heard the name of Hampton before. I don't know the man.

"Q. Well, didn't he call on you about Labor Day, 1927?

"A. No sir, I don't know such a man".

 Considerable more testimony to the same effect was admitted without objection. Then defendant objected to pursuing that line of cross-examination further, which objection was overruled; the further testimony was a reiteration of what had been admitted without objection. This evidence was harmless and the substance of it had been admitted without objection. Thereafter, plaintiff called Mr. Hampton to the witness stand who testified to the effect that he was a mining engineer and had called upon defendant at her office on Labor day of 1927 for the purpose of looking into the proposition of the marble quarry; that he was introduced to her, and advised her of the purpose of his visit. This testimony was admitted without objection. After the witness had left the stand, defendant moved to strike out all of his testimony which motion was denied. Defendant is not permitted to speculate on the testimony by not objecting to its admission and then, if not satisfied, move to strike it out. *Blue v. P. R. L. & P. Co.,* 60 Or. 122 (117 P. 1094); *Thomas v. Smith-Wagoner Co.,* 114 Or. 69 (234 P. 814); *Tyler v. Moore,* 111 Or. 499 (226 P. 443).

3. This assignment of error is based on remarks of counsel on matters outside of the record.

 Part of the consideration paid for the stock was in the form of a promissory note of the purchaser. There is no evidence in the record establishing the value of the note, nor was it necessary. Counsel for plaintiff, in making his argument to the jury, referred to the

note as being, "as good as cash", "is perfectly good" and "as good as a United States bond". Defendant objected to such remarks whereupon counsel for plaintiff made the statement in the presence of the jury,

"If in my argument to the jury, I stated that the note was an absolute as good as gold, I will to that extent retract the statement. I will say in explanation, that so far as the record shows, this note is good and is collectible * * *".

This statement was also objected to by counsel for defendant. The court thereupon said, in the presence of the jury,

"Well, the jury will be instructed that the statements of counsel are not evidence and the jury will be instructed that they are the exclusive judges of the facts in the case".

■ This was sufficient to warn the jury against being misled by the statements of counsel. Generally, the practice of counsel in going outside the record in the argument to the jury is not to be commended, and in a case where the party against whom such argument is made would probably have been prejudiced thereby this court would reverse a judgment supported or bolstered by such argument on matters not in the record or upon issues on which there was no evidence.

"The general proposition is well established that if property is placed in the hands of a broker for sale at a certain price or upon certain terms, and a sale is brought about through the broker as the procuring cause, he is entitled to a commission on the sale, even though the final negotiations are conducted through the owner, who in order to make a sale accepts a price less than that stipulated to the broker or terms more liberal than those the latter was authorized to accept". 4 R. C. L., § 59, p. 322.

4, 5, 6 and 7. These assignments of error are based upon the court's refusal to give defendant's requested instructions, 2, 3, 4 and 5.

Defendant's requested instruction No. 2 reads as follows:

"I instruct you that it is the law that to entitle a broker to a commission when the contract concluded differs from that which the broker was authorized to negotiate, the negotiations commenced by the broker must have continued uninterruptedly and the broker must have been actively instrumental throughout in causing the parties to consummate the transaction".

The other instructions requested covered, in effect, the same proposition of law. While, as announcing general principles of law, these instructions are correct, in the instant case, however, they would be likely to mislead the jury. While it is true that the broker must be the active agent in procuring the purchaser and inducing him to complete the sale, the negotiations need not be uninterrupted, but the continuity of the broker's agency in bringing the transaction to a conclusion must be established.

The court, in covering these questions, said:

"The sale of the property to Mr. Bloomer, if there was a sale, would not entitle plaintiff to recover unless you find that the services of the plaintiff were the procuring cause of the purchase of the property by Mr. Bloomer. * * * The expression, 'Procuring cause', as used in the books and as legally defined, "refers to the cause originating a series of events, which without breaking their continuity result in the prime object in the employment of the agent. That is one definition. There are other definitions.

\*　　　\*　　　\*　　　\*　　　\*

"In determining whether the plaintiff did procure Bloomer to buy the defendant's property, it must be shown by the evidence that the services of the plaintiff

were the procuring cause of Bloomer's purchase of the property. If you find the procuring cause of the sale was some other cause, but for which no sale would have been made, then the verdict shall be for the defendant and the plaintiff is not entitled to recover''.

■ 8. This assignment of error is based on the court refusing to give the following instruction:

"If you find from the evidence that the plaintiff was looking solely to Mr. Bloomer for her compensation on the deal between him and the defendant and Dr. Skiff, and disclaimed any liability of the defendant to her, then your verdict must be for the defendant''.

It must be remembered that defendant's answer is a general denial. There is no pleading to the effect that plaintiff released defendant from the contract. In support of defendant's request for this instruction there was introduced in evidence, on cross-examination of plaintiff (defendant's exhibit No. 6), a letter written by plaintiff to the defendant from which the following excerpt, dealing with the commission claimed by plaintiff, is taken:

"I am rushing this through before you have another conference with Mr. B. At your next conference it will be best to make him thoroughly understand that he must not try to dictate in regard to my com. but that he must come thru sufficiently for you to take care of it. Have him sign a contract to you to that effect. He knows what I am entitled to. * * * Let him understand I expect com. on full amt. involved and paid by him.—in this entire transaction regardless of the time required for him to meet such obligations or the form in which said amt. is given or paid—whether it is cash —notes or for cash for assessments * * *. Now my dear, I don't want you to feel that I am after you— for I am not—but I surely want Mr. B to walk the chalk line—and he must do so—so far as I am concerned.

"Right is right and I don't propose he shall do any other way with me and please don't mention this to absolutely no one, but there yet may be way open to break even with him".

There was no motion made to amend the pleadings to conform to the testimony even should it be considered that such testimony tends to show a release of defendant. Under these circumstances, it was not error for the court to refuse the requested instructions.

Finding no prejudicial error, the judgment will be affirmed. It is so ordered.

BELT, BEAN and BAILEY, JJ., concur.