Argued October 29, 1956, affirmed January 23, petition
for rehearing denied February 21, 1957

# SHERWOOD *v.* GERKING

306 P. 2d 386

*Richard R. Morris,* Portland, argued the cause for appellant. With him on the briefs was Thomas J. Moore, Portland.

*B. D. Isaminger* and *William E. Hanzen,* Pendleton, argued the cause and filed a brief for respondent.

Before WARNER*, Chief Justice, and ROSSMAN, LUSK and McALLISTER, Justices.

LUSK, J.

The plaintiff, Carl Sherwood, d.b.a. Sherwood Agency, brought this action to recover the sum of $10,000 alleged to have been earned by him under a real estate broker's employment contract with the defendant, Harold C. Gerking. After a trial before the court, without a jury, findings of fact and conclusions of law and a judgment were entered in favor of the plaintiff. Defendant has appealed.

The evidence discloses the following facts: In February, 1955, the defendant was the owner of a ranch in Umatilla County comprising 480 acres. Prior to the execution of the employment contract sued upon, the plaintiff, a licensed real estate broker with an office in Pendleton, had shown the property to John A. Bafus and his wife and secured their signatures to an earnest money receipt for $5,000 in which they offered to purchase the ranch for $200,000. Sherwood submitted the agreement to Gerking, who objected to the terms of the proposed sale and dictated to Sherwood different terms which the latter incorporated in a new earnest money receipt. Sherwood, however, refused to go any farther

---

* Chief Justice when this case was argued.

in the matter unless Gerking gave him an exclusive "listing." On February 23, 1955, Gerking executed an agreement entitled "REAL ESTATE BROKER'S EMPLOYMENT CONTRACT," containing such a listing on a printed form. The property is therein described as "480 acres, known as Harold Gerking Ranch, County of Umatilla, State of Ore." The selling price, free of encumbrances, is stated as $200,000, and terms "29% down bal. to suit seller." Sherwood is authorized to sell the property at the price and on the terms noted and to accept a deposit on the purchase price. The agreement contains the following additional provisions:

"In the event that you * * * shall find a buyer ready and willing to enter into a deal for said price and terms, or such other terms and price as I may accept * * * I hereby agree to pay you in cash for your services a commission equal in amount to 5% of said selling price. * * * I authorize you, at any time, to fill in and complete all or any part of the 'Informative Data' below, except financial details. * * *

"THIS LISTING IS AN EXCLUSIVE LISTING and you hereby are granted the absolute, sole and exclusive right to sell or exchange the said described property. In the event of any sale, by me or any other person, exchange or conveyance of said property, or any part thereof, during the term of your employment, or in case I withdraw the authority hereby given prior to said expiration date, I agree to pay you the said commission just the same as if a sale had actually been consummated by you."

The expiration date of the agreement is stated as March 28, 1955.

The form employed for the agreement contains below the lines for the signatures of the parties, under

the heading "FARM PROPERTY INFORMATIVE DATA," a large number of blank spaces to be filled in with additional information concerning the property to be sold, and at the bottom of the form the word "Remarks," opposite which appears the following in the handwriting of Sherwood: "It is understood Mr. Flint Johns has right to meet all offers. He has lease." Sherwood testified that at the time that the listing was signed he wrote in these words for his own information, as Gerking had informed him that the property was under lease to Flint Johns and that a provision of the lease reserved to Johns a 30-day option to meet any offer made for the purchase of the ranch. In view of this provision of the lease, Gerking also directed that the earnest money receipt should allow a period of 35 days for the securing by Sherwood of the seller's acceptance of the offer contained in the earnest money receipt. Sherwood prepared a new earnest money receipt in accordance with the instructions given him by Gerking, and journeyed to the home of Mr. and Mrs. Bafus near Spokane, Washington, for the purpose of securing their signatures to it. It was not signed by them, however, but by their son, Harvey F. Bafus. It is dated February 24, 1955. Sherwood testified that Mr. and Mrs. Bafus were buying the property for their son, and, therefore, wanted him to sign the agreement, but that they intended to sign with him when the contract of sale should be finally made up. The sum of $5,000 which the older Bafus had previously paid to Sherwood as earnest money was retained by him as payment under the new earnest money receipt.

This transaction having been consummated, Sherwood informed Gerking that the receipt had been signed, and was instructed by the latter to see Mr. Alfred Cunha, Gerking's attorney, who would attend

to notifying the lessees of the offer. Sherwood saw Cunha and left with him the earnest money receipt. Cunha thereupon, under date of February 25, 1955, addressed a letter to Mr. and Mrs. Flint N. Johns, the lessees, in which he called their attention to the provision of the lease giving them the right to meet the terms of ''a bona fide offer to purchase the premises'' and stated ''This is notice to you as required by said clause that the undersigned have received a satisfactory and bona fide offer to purchase the property described in said lease for $200,000.'' The letter then sets forth the terms of the offer, advises the lessees that if they desire to meet it they should comply with those terms within 30 days after the mailing of the notice (as the lease provided), and is signed by Cunha as attorney for Harold C. Gerking and Rovene B. Gerking. A copy of this letter was sent by Mr. Cunha to the plaintiff. Under date of March 28, 1955, Mr. Cunha addressed a letter to Mr. John A. Bafus and Anna V. Bafus and Carl Sherwood in which he advised them that Mr. Johns had accepted the offer, thereby cancelling the Bafus deal, and that it was now in order to return the $5,000 to Mr. and Mrs. Bafus. Sherwood accordingly refunded the money and the Bafus deal was cancelled. Mr. Cunha's authority to act for the defendant is conceded. On April 16, 1955, Mr. and Mrs. Gerking and Mr. and Mrs. Johns entered into a contract of sale and purchase of the premises for $200,000, on terms somewhat different from those stated in the earnest money receipt.

The assignments of error raise two questions: First, that the evidence is insufficient to support the findings; second, that the employment contract is void because the description of the property does not measure up to the requirements of the statute of frauds.

500

■ (1) *Sufficiency of the evidence.* Under the allegations of the amended complaint, in which the entire transaction is set forth, and the evidence, we think that the question upon which the decision must turn is whether the plaintiff was the efficient or procuring cause of the sale of the property to Johns. The brief for defendant asserts that this question is not involved because the defendant did not agree to pay plaintiff a commission if he should be the procuring cause of a sale, or if Johns purchased the property. We agree that there is no specific promise in the listing contract with regard to a sale to Johns, but, otherwise, we think that defendant's brief is in error. The contract provided that the defendant would pay the plaintiff a commission in the event that he should "find" a buyer ready and willing to enter into a deal for the price and terms therein stated or such other terms and price as the owner might accept. The word "find" in the making of such contracts is used synonymously with "introduce" and "procure." *Low v. Paddock,* (Mo) 220 SW 969; *Vigeant v. Fidelity National Bank & Trust Co.,* 236 Mo App 774, 783, 158 SW2d 184; *Wachtel v. Harkless,* 112 Ind App 279, 44 NE2d 510; *Platt v. Johr,* 9 Ind App 58, 36 NE 294; *Gunn v. Bank of California,* 99 Cal 349, 33 P 1105; 8 Am Jur 1087-1088, Brokers § 172; Note, 44 LRA 321. Consequently, if the plaintiff's "efforts" were "the efficient, procuring or producing cause of the sale," he is entitled to his commission. 2 Mechem on Agency (2d ed) 2010-2011; *Arnett v. Scherer,* 142 Or 494, 500, 20 P2d 803.

■ Although the notation written on the contract form by the plaintiff with regard to the Johns lease is not necessarily to be excluded as a term of the contract because it appears below the signatures of the parties (12 Am Jur 552, Contracts § 61; *Bonewell v. Jacobson,*

130 Ia 170, 106 NW 614, 5 LRA (ns) 436; *Donohoe's Estate,* 271 Pa 554, 115 A 878, 20 ALR 392, with annotation at p 394); yet it is demonstrated by the plaintiff's testimony, which is not contradicted, that those words were not written as a part of the contract, but simply for the plaintiff's own information. Besides, the words, of themselves, neither import an agreement of the defendant to pay a commission for a sale to Johns nor exclude the notion of such an agreement. They are nothing more than the recital of an existing fact known to the plaintiff as well as the defendant at the time the listing agreement was entered into and to be given its due weight in determining the respective rights and obligations of the parties.

An excellent statement of the rules governing this case is the following from *Bail v. Glantz,* 78 Cal App 49, 53, 248 P 258:

"Under a contract such as the one here considered, the rule is that the broker has earned his commission when it is shown that he was the efficient cause of the sale; and his rights are the same whether his activities constitute the origin or the ending of a continuous series of negotiations leading to the successful consummation of the sale. It is not enough that he contribute indirectly or incidentally to the sale by imparting information which tends to arouse interest, but it is sufficient if it be established that he set in motion a chain of events which without break in their continuity caused the buyer and seller to come to terms, that his efforts constituted the proximate cause of the meeting of the minds of the principals, and he will not be deprived of his commissions because the negotiations which are brought about and partially carried on by him are afterwards completed by the parties themselves or through some one else (citing cases). It is necessary for the broker to prove therefore

that he was the efficient or procuring cause of the sale; in other words, it must appear that his efforts had to do with the meeting of the minds of the seller and buyer (Webster v. Parra [Cal. App.] 237 P. 804), but if, after he initiates the negotiations, the seller takes into his own hands the completion of the sale, the broker is so completely discharged from responsibility in the premises that the seller is estopped to contend against the broker's claims for commissions that the broker has not produced a purchaser who is ready, able, and willing to make the purchase."

■■■ Again, "If any act of the broker, in pursuance of his authority to find a purchaser is the initiatory step that leads to the sale consummated, the owner must pay the commission." *Hoadley v. Savings Bank of Danbury,* 71 Conn 599, 608, 42 A 667, 44 LRA 321. See, also, Mechem, op cit, 2010-2013. Nor will the fact that the final negotiations are conducted by the owner prevent recovery of the broker's commission. *Arnett v. Scherer,* supra, 142 Or at p 499. As stated in that case at p 500, "the negotiations need not be uninterrupted, but the continuity of the broker's agency in bringing the transaction to a conclusion must be established."

Finally, Mr. Mechem says:

"When the broker has, by whatever method found, and induced the purchase by, a buyer whom the principal accepted and to whom he has in fact sold, there could seem to be no doubt that the broker has performed his undertaking, under any rule." Mechem, op cit, 2006-2007.

■■■ Now, it appears from the evidence that the plaintiff found a purchaser acceptable to the defendant as shown by the letter written by Mr. Cunha, the defendant's duly authorized agent, in which he said that a

"satisfactory and bona fide offer to purchase the property" had been received by the defendant. The defendant would have gone through with the Bafus deal but for the exercise by Johns of his privilege of meeting the terms of the offer. The Bafus offer which the plaintiff secured was the thing that brought about the sale to Johns. At least these are facts which the circuit judge was warranted in finding from the evidence. And, since both plaintiff and defendant were aware of the terms of the option to buy contained in the Johns letter, and entered into the agreement in the light of that knowledge, it is a reasonable and permissible conclusion, in the absence of any stipulation to the contrary, that a sale to Johns was not intended to be excluded from the purview of the defendant's promise to pay a commission to the plaintiff for his services in finding a ready, willing and able purchaser. That Johns was such a purchaser is not disputed, nor would the defendant be heard to contend otherwise after having entered into a contract of sale with him. *Everson v. Phelps,* 104 Or 288, 295, 206 P 306, 26 ALR 780.

No case involving similar facts has been cited by counsel on either side, and we have been able to find no such case. But, as Mr. Mechem says, "if the purchase was the natural and proximate result of his [the broker's] endeavors, it is sufficient. The law prescribes no particular method of procedure, nor has it any other standard by which to measure exertion, in such a case, than the natural and proximate result attained." Mechem, op cit, 2012-2013.

So, it seems to us that a proper application to the evidence of the rules of law to which we have alluded fully warranted the conclusion of the circuit court. In determining whether the plaintiff was the procuring cause of the sale, that court was dealing with a ques-

tion of fact. Mechem, op cit, 2014-2018; *Hoadley v. Savings Bank of Danbury,* supra; *Bail v. Glantz,* supra. There was ample evidence to support the court's findings, and this court has no authority to disturb them.

The defendant invokes the rule that where the title to listed property is subject to a defect known to the broker, and that defect prevents sale of the property by the broker, he is not entitled to a commission. See *Sexton v. Berenson,* 186 Or 122, 124, 125, 205 P2d 146. What is claimed to be the defect was the privilege given to the lessee to meet the terms of the offer. But the true state of the case is this: If the lessee failed to exercise the privilege there would be no defect, while on the other hand if he exercised it, as was the case here, the result was bound to be a sale to the lessee. The contention only serves to emphasize the correctness of the conclusion that the plaintiff was the procuring cause of the sale to Johns.

(2) *The statute of frauds.* ORS 41.580 provides in part:

> "In the following cases the agreement is void unless it, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents in the cases prescribed by law:
>
> \* \* \* \* \*
>
> "(7) An agreement authorizing or employing an agent or broker to sell or purchase real estate for a compensation or commission; *but if the note or memorandum of the agreement is in writing and subscribed by the party to be charged, or by his lawfully authorized agent, and contains a description of the property sufficient for identification,*

*and authorizes or employs the agent or broker to
sell the property, and expresses with reasonable
certainty the amount of the commission or compen-
sation to be paid, the agreement shall not be void
for failure to state a consideration.*" (Italics added.)

The first question is upon the proper construction
of the foregoing statute. Brokers' agreements were not
made subject to the statute of frauds until 1909. See
Oregon Laws 1909, ch 27. The portion of the statute
which we have italicized and to which we shall refer
as the proviso was added by Oregon Laws 1917, ch 363.
There are apparently only four decisions of this court
in which the question of the sufficiency of the descrip-
tion of real property in a listing agreement under the
statute has been considered. *Puffer v. Badley,* 92 Or
360, 181 P 1, 4 ALR 1561 (1919), throws no light on
our present problem. *Henderson v. Lemke,* 60 Or 363,
119 P 482 (1911), and *Hughes v. Evans,* 64 Or 368, 130
P 639 (1913) were decided before the adoption of the
proviso. In the Henderson case a memorandum signed
by the defendant merely authorized the plaintiff to sell
"my property" without any description whatever. So
far as anything contained in the writing is concerned,
the property might have been anywhere in the world,
and it might have been either real or personal prop-
erty. The court nevertheless, in an opinion by Mr.
Justice McBRIDE, held that the contention that the
memorandum was void because it did not describe the
property was untenable. The court said:

"The argument that the memorandum is void,
because it does not describe the property, is not ten-
able. This is not a contract for the sale of real
property, but a contract for the services of a person
to find a purchaser. It is immaterial what the de-
scription of the property is, if it can be identified;
and, while *the complaint* is not so definite in this

respect as it could have been made, we think, in the absence of a motion to make definite, it is sufficient." (Italics added.)  60 Or at p 366.

But in the Hughes case the court, while attempting to reconcile the decision with the Henderson case, took a different view of the meaning of the statute. The memorandum in the Hughes case described the property thus:

"358 acres.  *  *  Acres cleared, 275. House 2 stories, 7 rooms.  *  *  Barn 2. Orchard 1-2 acres. *  *  Fences in good condition. Watered by springs. *  *  All acres hilly.  *  *  275 acres timber."

The address of the owner is given in the memorandum as "Rickreall, R.F.D. 1. County, Polk." The court held that this description did not comply with the statute of frauds, saying:

"*  *  * If the property were identified *by the agreement,* and the description were not sufficient to locate it, extrinsic evidence might be resorted to for that purpose, but not in order to determine what property is meant. This agreement does not identify the property, and its identity, as well as location, must be established by extraneous testimony." (Italics added.)  64 Or at p 370.

The court said that the Henderson case held "that it is immaterial what the description of the property is, if it can be identified, thus recognizing that the identity of the property is necessary. In that case it was identified." But the court seems to have overlooked the fact that in the Henderson case the property was identified, not in the agreement, but by the allegations of the complaint, whereas the Hughes case holds that the description in the agreement must be sufficient to identify the property.

*Trumbly v. Fixley,* 178 Or 458, 168 P2d 571 (1946), was decided after the adoption of the proviso. The memorandum described the property as 237 acres and contained other data indicating its general location. The action was one to recover a broker's commission, and the complaint set out the memorandum *haec verba,* and alleged that the plaintiffs procured a purchaser for certain described premises comprising 316.96 acres, or approximately 80 acres more than the memorandum covered. A demurrer to the complaint was held to have been properly sustained. The description in the memorandum was one which, under other circumstances, we think should have been held sufficient. But the complaint rendered the description wholly indefinite since there was no way of determining from its allegations what 237 acres out of the whole were the subjects of the transaction. We said: "The pleader made no attempt to reconcile the discrepancy" between the memorandum and the complaint. Had the case gone to trial on the complaint, and the plaintiffs proved only what they alleged, obviously the identity of the property would have remained undisclosed. The decision, therefore, was sound. In concluding the opinion the court said:

"According to the complaint herein, the defendant owned 316.96 acres of land in the Williams district or neighborhood. The memorandum covers only 237 acres, and it would require extrinsic evidence to establish what 237 acres out of the 316.96 were the subjects of the transaction. Under those circumstances, the memorandum was insufficient under the statute of frauds to identify the property, and the agreement to pay a commission to the brokers was void." 178 Or at p 461.

It was not intended by this language to hold that extrinsic evidence is never admissible in this class of

cases. Our own decisions, some of which are cited in the opinion, are to the contrary. See *Burns v. Witter,* 56 Or 368, 108 P 129; *Flegel v. Dowling,* 54 Or 40, 102 P 178, 135 Am St Rep 812, 19 Ann Cas 1159; *Bogard v. Barhan,* 52 Or 121, 96 P 673, 132 Am St Rep 676; *House v. Jackson,* 24 Or 89, 32 P 1027. In the Trumbly case, however, there were no allegations in the complaint which would have permitted the introduction of parol evidence except evidence which, instead of aiding in locating the property, would render the description inadequate.

In the opinion in the Trumbly case the court said, evidently referring to the proviso, ''The memorandum must contain a description of the real property sufficient for identification.'' But it readily becomes apparent, upon careful consideration of the language of the proviso, that it does not say that a real estate brokerage agreement must contain ''a description of the property sufficient for identification,'' but rather that it merely saves such an agreement from being held void ''for failure to state a consideration'' if the note or memorandum thereof contains such a description and otherwise meets the test of the statute of frauds. The opening sentence of the statute requires that the note or memorandum of the agreement be one ''expressing the consideration.'' The proviso in subdivision 7 relieves from that requirement in cases where its conditions are met.

There are many things about this proviso that we do not understand, but we need only say, in leaving the subject, that, whatever it may have been intended to accomplish, it does not have the effect which we seem to have attributed to it in *Trumbly v. Fixley,* supra.

This is not to say, however, that, regardless of the

proviso, the statute does not require a description of the property sufficient for identification.

We are back to the conflicting interpretations of the Henderson and Hughes cases. As they are inconsistent they cannot both be followed. We agree with the underlying premise of the Henderson opinion that the brokerage contract is one for the services of a person to find a purchaser. For this reason a less strict rule applicable to the description of the property may be applied than in the case of deeds and contracts of sale. This is the view taken by numerous courts. See 80 ALR 1466; *Howell v. North*, 93 Neb 505, 140 NW 779; *West v. Newton*, 229 Mich 68, 201 NW 196; *Powers v. Bohuslav*, 84 Neb 179, 120 NW 942; *Gifford v. Straub*, 172 Wis 396, 179 NW 600; *Cowing v. Wofford*, 68 Cal App 538, 229 P 883. But we do not believe that the statute can be so construed as to dispense with all description of the property. The statute says that some note or memorandum of the agreement must be in writing and signed by the party to be charged. An essential feature of the agreement is the particular property which the broker is authorized to sell. Were it to be held that no identification of the property in the memorandum is required the way would be opened for the perpetration of frauds which the statute was passed to prevent. To that extent we agree with the Hughes case, but we think that the description there under consideration should have been held to be sufficient. Even in cases involving contracts for sale of lands, descriptions no more definite have been sustained by this court and parol evidence admitted for the purpose of establishing the location of the property. See *Bogard v. Barham*, supra, "his 5-acre residence property lying west of the Catholic Church"; *Burns v. Witter*, supra, "my farm containing 40 acres."

*Gifford v. Straub,* supra, states the rule to be used in this class of cases about as clearly as it is possible to make it. In that case the memorandum read:

"Plum City, Wis., May 20—1919.
"I agree to giv H. M. Gifford all he gets for my place over $11,500. Sep. 20—1919 exclusive sail.
(Signed) "MILTON STRAUB."

The statute required that the memorandum describe the real estate. It was objected that the above description was insufficient, but the court said:

"In our opinion the first objection is not well founded. There was no demurrer to the complaint, and the evidence showed that the defendant owned only one tract of land, the eighty acres on which he lived, and that this was the land shown to the proposed purchaser and the only land the parties had in mind. It was objected that oral testimony identifying the land described as 'my place' was not admissible for the reason that it was an attempt to contradict the terms of the written instrument, but on well settled rules this objection was not well founded. It has been many times decided in cases arising under the statute of frauds that an indefinite description does not render the contract invalid if by extrinsic evidence the land conveyed can be made certain.

"The writing relied on to establish the contract need not describe the land which is subject to sale otherwise than by a reference therein to some extrinsic fact by means of which the land can be known with sufficient certainty." 172 Wis at p 398.

As to the admission of parol proof, see *Mead v. Parker,* 115 Mass 413, 15 Am Rep 110; *Marks v. Cowdin,* 226 NY 138, 123 NE 139 (per Cardozo, J.); *Plant v. Bourne,* 2 Ch 281 (C A 1897); 2 Corbin on Contracts § 505.

The evidence here shows that the defendant owned but one ranch comprising 480 acres, and that this was the property which the plaintiff had shown to the elder Bafus before the listing agreement was signed, as the defendant knew at the time he signed it. It also appears, as alleged both in the amended complaint and the answer, that the land was occupied by Flint Johns under a lease which contained a provision heretofore referred to giving the lessee the privilege of purchasing the property at the price and on the terms fixed in a bona fide offer satisfactory to the owner. This lease, which was received in evidence, contains a legal description of the property. The identity of the land is not even in dispute.

Defendant filed a demurrer to the amended complaint which was overruled, and urges that the ruling was error because there was no allegation in the pleading that the property described in the memorandum was the only property owned by the defendant. Such an allegation was, of course, not necessary in any event as it would have been sufficient to allege that it was the only 480-acre ranch owned by the defendant in Umatilla County. Assuming that the amended complaint, in order to state a cause of suit, should ordinarily contain such an allegation, we are of the opinion that the allegations with respect to the Flint Johns lease adequately distinguished the property of the defendant for which the plaintiff was authorized to procure a purchaser from any other 480-acre ranch in Umatilla County which he may be supposed to have owned. See *Scott v. Marquette Nat. Bank*, 173 Minn 225, 217 NW 136. The demurrer was properly overruled.

We think that the description in the listing

agreement contains references to extrinsic facts by means of which the land can be known with sufficient certainty and measures up fully to the requirements of the statute.

The judgment is affirmed.