PIO, *Appellant,*

*v.*

JOHN B. GILLILAND CONSTRUCTION, INC. et al,
*Respondents.*

(75-100, SC 24422)

560 P2d 247

*Dwayne R. Murray,* Portland, argued the cause for appellant. With him on the briefs were Bailey, Doblie & Bruun.

*Michael V. Phillips,* Eugene, argued the cause for respondent. With him on the brief were Hammons, Phillips & Jensen.

Before Denecke, Chief Justice, and McAllister, O'Connell, and Tongue, Justices.

McALLISTER, J.

## McALLISTER, J.

This is a suit by the assignee of the trustees of trust funds established under the terms of a labor agreement to collect from an employer contributions to such funds and for an accounting to determine the amounts due. The trial court found for the defendants and entered a decree dismissing the suit. Plaintiff appeals. We reverse.

The basic issue is whether a Memorandum Agreement dated June 29, 1972 was binding on the defendant John B. Gilliland Construction, Inc., or John B. Gilliland personally for the term stated in the agreement or only during the construction by Gilliland, Inc., of a bridge in Baker.

Defendant Gilliland, Inc., is a corporation engaged in construction work, mainly bridge construction. Since the defendant John B. Gilliland is president and sole owner of John B. Gilliland Construction, Inc., we will refer to the defendants jointly as Gilliland.

On June 29, 1972 Gilliland was engaged in the construction of a bridge on Campbell Street in Baker. On that date John B. Gilliland signed his name on a Memorandum Agreement with the Oregon State Council of Carpenters and Southwest Washington District Council of Carpenters, hereinafter referred to as the Union. The Memorandum Agreement required Gilliland to comply with all the terms of a Master Agreement and agreements establishing certain trust funds and requiring Gilliland to make contributions to certain trust funds therein designated.[1]

---

[1] (a) The Memorandum Agreement incorporated by reference the Master Agreement and the agreements establishing the trust funds. The Master Agreement provided as follows:

"This Agreement shall cover the entire State of Oregon, and the following area in the State of Washington: The counties of Klickitat, Skamania, Clark, Cowlitz, Wahkiakum and that portion of Pacific County south of a straight line made by extending the north boundary line of Wahkiakum County west to the Pacific Ocean."

(b) The designated trust funds were the Oregon-Washington Carpenters-Employers Health-Welfare and Dental, Pension, Apprenticeship and Training, Vacation Savings, and the Construction Industry Advancement trust funds.

[ 977 ]

The agreement further provided that:

"7. This Agreement shall remain in full force and effect until May 31, 1973, and shall continue from year to year thereafter unless either party shall give written notice to the other of a desire to change or cancel it at least sixty days prior to May 31, 1973 or May 31 of any succeeding year. * * *"

Gilliland contends that when he signed the agreement it was agreed by him and the representative of the Union, Harold Hansen, that it would be applicable only to the Baker job and that Gilliland would not be required to make any payments to the Union on account of wages earned by carpenters employed on any subsequent job. In other words, Gilliland contends that the agreement expired upon completion of the Baker job. Hansen testified that he did not agree with Gilliland that the Memorandum Agreement would apply only to the Baker job.

Gilliland, in his brief in this court, contends that the Memorandum Agreement is not binding on him because his signature was not affixed on the line designated for the signature of an authorized representative of the company.

We reproduce here the second page of the Memorandum Agreement on which the signatures appear:

[ 978 ]

7. This Agreement shall remain in full force and effect until May 31, 1973, and shall continue from year to year thereafter unless either party shall give written notice to the other of a desire to change or cancel it at least sixty days prior to May 31, 1973 or May 31 of any succeeding year. The Employer and the Unions shall be bound by any renewals or extensions of the Master Agreement and the Trust Agreements, or any new agreements, unless an appropriate written notice is given to the other party at least sixty days prior to May 31, 1973, or any subsequent year of their intent not to be bound by any new, renewed or extended agreement.

Signed this ___ 2 9-ct _____ day of _Juae/_____ , 19 7 2.

| UNION | EMPLOYER |
|---|---|
| Oregon State Council of Carpenters and its Affiliated Local Unions 201 S. W. Arthur Street Portland, Oregon 97201 Telephone: 224-3902 | _____Company is a sole proprietorship Correct name of owner is: _____ |
| By _____ Executive Secretary | _____Company is a partnership Correct names of partners are: _____ |
| Business Representative of Local Union or District Council By _____ Authorized Representative of Local Union No. 2416 or Representative of the District Council | Partner _____ Partner _____ ✓ Company is a corporation Correct names of officers are _____ Joh A. Gilland President _____ Carlton L. Null Secretary |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . | |

| UNION | EMPLOYER |
|---|---|
| Southwest Washington District Council of Carpenters 612 E. McLoughlin Blvd Vancouver, Washington 98663 Telephone: 693-0731 | COMPANY (EMPLOYER) |
| Business Representative of Local Union or District Council | Name of Company                    (Please print) _____ |
| By_____ Authorized Representative of Local Union No _____ or Representative of the District Council | Street Address _____ City                              Telephone By_____ Authorized Representative of the Company |
| ⬤567 | . . . . . . N. KESSLER |

It will be noted that the names of Gilliland and Carlton L. Hull appear under the caption:

✔ Company is a corporation

Correct names of officers are:

and that the blank spaces under the caption EMPLOYER are not filled out and that there is no signature on the bottom line designated for the signature of an Authorized Representative of the Company. Gilliland testified that he filled in the date on the agreement and that he signed both his name and the name of Carlton L. Hull, who was the secretary of the corporation. The complaint was dismissed against Carlton L. Hull on the motion of the plaintiff.

As stated above, Gilliland contends that because he signed the agreement on the line designated for the names of the corporate officers and not on the bottom line as the Authorized Representative of the Company that the agreement is not binding on either John B. Gilliland Construction, Inc., or John B. Gilliland personally.

We find no merit in this contention for two reasons. First, it is a general rule that a signature located anywhere on a contract is sufficient to authenticate the instrument if it was placed there with the intent to do so. 1 Corbin on Contracts (1963) 122, §31; 17 CJS 736-737, Contracts §62(b); 17 Am Jur 2d 410-411, Contracts §72. It is not necessary that the signature be at the end of the document. *Sherwood v. Gerking,* 209 Or 493, 500-501, 306 P2d 386 (1957).

Secondly, Gilliland testified repeatedly that he had signed the agreement. He testified as follows:

"THE WITNESS [Gilliland]: Well, the reason I signed this paper—

* * * * *

"A   Yes. He [Hansen, the Union agent] came out several times and wanted me to hire some of his carpenters, and wanted me to sign an agreement with

[ 980 ]

the carpenters. We finally agreed that I would sign—his words was a sweetheart agreement for this particular job.

\* \* \* \* \*

"A  What he [Hansen] said was that this was a sweetheart agreement. It was for the lifetime of the job only, and this is the reason I signed it, was so that he wouldn't be out to the job everyday.

\* \* \* \* \*

"Q  Was there any discussion about your signature at that place rather than putting a writing in someplace above?

"A  Yes.

"Q  Was that discussion between you and a Mr. Hansen?

"A  Right.

"Q  What was that discussion?

"A  Well, he said if I signed up here that it was, for want of a better word, a sweetheart agreement.

\* \* \* \* \*

"THE WITNESS:  Well, he said if I signed it up here it would be a sweetheart agreement, and if I signed it down here it would be a regular agreement for the lifetime of the contract.

\* \* \* \* \*

"Q  You've testified that that is an accurate copy of the document you signed, is that correct?

"A  Right.

"Q  There are no alterations in the language of that contract, no initialed modifications by either you or anyone else, are there?

"A  The only thing I can see that may be different is the typing of my name and address below here after I signed it. And I don't recall the check mark up here. *But my writing is my writing and I'm not trying to deny that I signed it.*"

■  We think that the quoted testimony of Gilliland establishes beyond doubt that when he put his signature on the Memorandum Agreement he intended to enter into a binding contract with the Union. The only question is whether the term of the agreement was for

the duration of the Baker job or whether it was to remain in effect until May 31, 1973 and annually thereafter unless cancelled by notice to the other party as provided in paragraph 7 of the Memorandum Agreement as quoted above.

■ We turn then to Gilliland's contention that the agreement was to expire upon completion of the Baker job. His contention raises a question of whether evidence of the alleged oral agreement is admissible under the parol evidence rule. Since this rule involves an application of general principles of contract law, which presumably form a part of federal labor law, we are not required to choose between state and federal law in deciding this labor relations issue. *De Vore v. Weyerhaeuser Co.,* 265 Or 388, 391 N 1, 508 P2d 220 (1973); *Springer v. Powder Power Tool Corp.,* 220 Or 102, 107, 348 P2d 1112 (1960).

■ In *Caldwell v. Wells,* 228 Or 389, 365 P2d 505 (1961), this court followed the principle that the parol evidence rule is a rule of integration and that it makes inadmissible evidence only as to those terms of the bargain which the parties intended to be integrated into the contract in question. The court again relied on the statement of this rule contained in 1 Restatement of Contracts §240, which provides:

"(1) An oral agreement is not superseded or invalidated by a subsequent or contemporaneous integration, nor a written agreement by a subsequent integration relating to the same subject-matter, if the agreement is not inconsistent with the integrated contract, and

"(a) is made for separate consideration, or

"(b) is such an agreement as might naturally be made as a separate agreement by parties situated as were the parties to the written contract."

In this case the provision fixing the duration of the contract was negotiated by the parties. The Union was demanding an agreement effective until May 31, 1973 and continuing thereafter until cancelled. Gilliland

was demanding an agreement effective only for the duration of the Baker job. We find that the execution of the Memorandum Agreement was an integration of the final agreement of the parties.

■ Our finding is supported by the conduct of Gilliland inconsistent with his claim that the agreement was to expire upon the termination of the Baker job. Gilliland did not continue to file monthly reports and make payments after the Baker job was completed. However, he permitted an accountant employed by the Union to audit his books on at least two occasions. After the first audit Gilliland paid the Union $763.67, which was found due by the audit. Gilliland's corporate secretary Hull testified that he paid the $763.67 after consultation with a lawyer because it was less expensive than to litigate the issue. However, there was no notice on the check or accompanying it that the amount was paid under protest.

Gilliland again permitted a second audit of its books by a Union accountant for the period from May 1, 1974 through October 1974, which showed that Gilliland owed $1,175.59. Gilliland did not pay that amount and that is the basic sum which the Union is attempting to collect by this suit. However, on September 8, 1975, three years after Gilliland contends the Memorandum Agreement had expired, Gilliland paid $145.36, which the Union claimed was due under the agreement. That payment was made more than seven months after this suit was filed. Again, Gilliland claimed that the payment was made because failure to pay might have held up a substantial sum due Gilliland for work performed on a construction job. Again, however, there was no notice on or accompanying the check that the amount was paid under protest.

■ We think that if Gilliland contended that the Memorandum Agreement did not express the agreement of the parties it was his duty to renounce the agreement promptly when it was being enforced

against him. See *Lewis v. Lowry,* 322 F2d 453, 456 (4th Cir 1963).

■ We have held that an oral contract must be "not inconsistent with the integrated contract." *DeVore v. Weyerhaeuser Co., supra,* 265 Or at 402.

Comment b of 1 Restatement of Contracts §240 provides:

> "A collateral oral agreement in terms contradictory of the express words of a contemporaneous or a subsequent integration is necessarily inoperative. * * *"

Gilliland's claim that there was a "collateral oral agreement" that the contract was to expire upon the completion of the Baker job, was in direct conflict with the express words of the integration and is, therefore, necessarily inoperative.

The decree of the trial court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

**DENECKE, C. J.,** specially concurring.

This is a suit for an accounting; therefore, we try it de novo. Under these circumstances, the findings of the trial court are persuasive but not binding upon us. The trial court found that Gilliland individually and corporately did not accept the terms of the contract by signing the contract. Because of Gilliland's testimony and the actions of Gilliland Corporation subsequent to the date of the agreement, all as set out in the majority opinion, I am not persuaded by the trial court's findings and would find to the contrary, as did the majority.

I specially concur to state why I concur on the issue of the parol evidence rule.

Our decisions, similar to those of most other jurisdictions, have varied in the application of the parol evidence rule. For examples, see *Caldwell v. Wells,* 228 Or 389, 365 P2d 505 (1961), as contrasted with *Webster v. Harris,* 189 Or 671, 222 P2d 644 (1950).

I find 3 Corbin, Contracts §§ 581-585 (1960), to be the clearest explanation of what appears to me to be the preferred version of the rule. He states: "The 'parol evidence' rule does not itself purport to establish the fact of 'integration'; and until that fact is established the 'rule' does not purport to have any legal operation." Corbin, supra, at 442. He states this same proposition another way: "The parol evidence rule purports only to exclude evidence in case there is an 'integration'; that the evidence is offered to contradict or vary." Corbin, *supra,* at 480.

An integrated contract is one containing the entire agreement between the parties. I understand Corbin to state that if it is established that there is an integrated contract, parol evidence is not admissible to vary its terms. I understand him to further state, however, that parol evidence is admissible on the issue of whether the parties intended the contract to be an integrated agreement.

Corbin further writes:

"Often it is said that the additional term shall not vary or contradict that which has been reduced to writing; it must be additional to and consistent with the contents of the document. This is quite correct, after the court has found as a fact that the document was agreed upon as a definite and accurate statement of a part of the contract that was finally made. A party cannot admit this and at the same time contradict it. But an offer to prove a provision that does contradict the writing must generally also be an offer to prove that the document was not so agreed upon. Surely, this must be listened to and weighed. If it is flimsy and improbable and motivated by a wish that an agreement actually made had been different and more advantageous, the court can disregard it as untrue, and may properly direct a verdict in spite of it. But the mere fact that it is in contradiction of a writing does not in itself prove that it is untrue; the character of the writing, the surrounding circumstances, and the testimony of other witnesses may unite to show the probability of its truth." Corbin, supra, at 468-470.

This reasoning is consistent with our statement in

[ 985 ]

*Caldwell v. Wells, supra* (228 Or at 395): "Whether the parties intended to integrate their agreement in the writing is a question of fact in each case." Corbin states similarly: "The question whether the parties have assented to a specific writing as a complete and accurate integration of the terms of their contract is always a question of fact." Corbin, supra, at 571.

Along these same general lines we stated in *Blehm v. Ringering,* 260 Or 45, 50, 488 P2d 798 (1971):

> "* * * Parties may enter into two or more contemporaneous contracts relating to the same subject matter, and they may reduce to writing only one or more of the same, the oral contracts being regarded as collateral to and distinct from the written contract. In such an instance, the parol evidence rule does not bar proof of the oral agreement. 70 ALR 752, 756-57. In determining the intent between parties to make an integrated contract, the general rule has been adopted that the surrounding circumstances, as well as the written contract, may be considered. 70 ALR 752, 761. This court has now adopted the surrounding circumstances approach, and we no longer look only to the face of the written contract to determine the intent of the parties. 'Whether the parties intended to integrate their agreement in the writing is a question of fact in each case.' * * *."

Then, in *DeVore v. Weyerhaeuser Co.,* 265 Or 388, 508 P2d 220, cert den 415 US 913, 94 S Ct 1408, 39 L Ed2d 467 (1973), in dictum, we drew back from this acceptance of Corbin's statement. After the statement from *Caldwell v. Wells, supra* (228 Or 389): "Whether the parties intended to integrate their agreement in the writing is a question of fact in each case," we stated:

> "If this were the correct rule, without any further limitations, evidence could always be offered of any prior or contemporaneous oral agreement and in all cases the question whether the parties intended to supersede such an oral agreement by the integration of their entire agreement into the terms of the written contract would be a question of fact which must always be submitted to the trier of facts, whether court or jury. It may be said,

however, with some justification, that the adoption of such a rule, without any limitations, would emasculate, if not 'repeal,' the parol evidence rule, which is a rule adopted by statute in Oregon, as in many other states." 265 Or at 400-401.

Thereafter, however, we quoted with approval from Corbin:

" '* * * [t]he oral admissions of the plaintiff that the agreement included matters not contained in the writing may be proved to show that it was not assented to as a complete integration, however complete it may look on its face. * * *' " 265 Or at 403.

We relied upon an oral admission by the plaintiffs' agent that the parties did not intend the writing to be an integrated agreement and upon this ground and others held the writing was not an integration and plaintiffs were bound by a previous oral agreement.

I prefer Corbin's complete analysis and would hold that parol evidence is admissible as proof that the agreement was or was not intended to be an integrated contract.

In the present case the trial court made no findings upon the issues of the term of agreement or whether the agreement was an integrated contract. Upon the basis of the evidence, as stated in the majority opinion, I would find that the parties intended the writing to be an integration of their agreement on the term of the agreement. For this reason, evidence that the defendant only intended to contract for the Baker job is immaterial.

O'Connell, J., joins in this specially concurring opinion.