Argued and submitted June 10, affirmed September 28, 1983

# RAINBOW CONSTRUCTION CO., INC.,
*Respondent,*

*v.*

# OLSEN et al,
*Appellants,*

*v.*

# KOENIG et al,
*Respondents.*

(116,361; A25783)

669 P2d 814

J. Michael Alexander, Salem, argued the cause for appellants. With him on the brief was Burt, Swanson, Lathen, Alexander & McCann, Salem.

John Daniel Callaghan, Salem, argued the cause for respondents.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

The issue in this action to enforce a lien resulting from house moving services performed by plaintiff for defendants Olsen and Groves is whether an earnest money agreement entered into by the parties was intended as a integration of their final agreement. The trial court concluded that it was not. We agree and affirm.

Defendants Olsen and Groves are real estate salesmen and developers. Plaintiff is engaged in the house moving business and is principally owed by August Koenig. Defendants filed a third party complaint against Koenig and his wife. The case was tried as if there were complete identity between Rainbow and Koenig, and the designation "plaintiff" in this opinion refers to Rainbow and to Koenig as its president.

In 1974, defendants contracted with plaintiff to move a house in Salem. Plaintiff moved the house, and defendants paid part of the moving price, leaving a balance due plaintiff of $12,461.35. In 1975, defendants became interested in purchasing, moving and remodeling an apartment complex and contacted plaintiff to inquire whether he wanted to enter into a joint venture with them. In return for moving the apartments, plaintiff would receive a one-third interest in the property. Plaintiff agreed, and the moving was completed in November, 1975. In 1976, plaintiff expressed interest in buying defendants' interest in the property and dissolving the joint venture. Prior to the final accounting, an earnest money agreement was prepared, which apparently was necessary for plaintiff to secure financing for the purchase. The agreement stated a sale price of $175,000 with a down payment of $10,000 paid by check and an additional down payment of $42,000, leaving the balance of $123,000 to be financed. An addendum to the agreement, signed by the parties and dated the same day as the earnest money agreement, provided that the $10,000 down payment represented "$10,000 owed to August Koenig by Wayne Olsen and Robert E. Groves. Balance of $42,000 represents equity and $10,000 commission." The "equity" referred to represented plaintiff's interest as a joint venturer in the property, and the $10,000 "commission" referred to the savings resulting from making a direct sale rather than through a realtor. The parties also agreed that plaintiff would move another

house for defendants as part of the purchase price, although that was not noted in the written agreement.

The transaction was closed through Willamette Valley Title Company in July, 1976. The documents reflect a selling price of $175,000, plaintiff's "equity of $55,000," credit to plaintiff of $11,315.54 and the receipt of loan proceeds of $112,500. The title company was never given a copy of the addendum to the earnest money agreement and apparently closed the sale on oral instructions from the parties. The "equity" apparently represented plaintiff's one-third interest in the property (one-third of $165,000); the loan was the amount he was able to finance; and the $11,315.54 was money he still owed defendants, subject to a final accounting of the joint venture. Defendants received a cash distribution of $27,315.07 from the sale. Plaintiff made no notation of a deduction from this amount for the money owed him by defendants for the Salem house move.

A final accounting was rendered in late 1976. The accountant used a sales price of $155,000 for the apartment property and determined that the amount due defendants was $18,439.02 rather than $11,315.54. The parties agreed that plaintiff could pay off the debt by moving more houses for defendants. Plaintiff continued to move houses for defendants until March, 1979, when he gave defendants a statement indicating that his credit for his work exceeded the amount he owed defendants ($18,439.02) by $3,613.85. Plaintiff included the amount of $12,461.35 in this statement for the Salem house move that he claimed was still not paid. Defendants, contending that the Salem account had been settled by deducting $10,000 from the apartment property purchase price, refused to pay the $3,613.85 balance. Plaintiff filed a lien against the property which he had last moved and then sued to foreclose the lien. Defendants counterclaimed for $8,847.50, the difference between the amount owed under the accounting of $18,439.02 and the credits for the house moves made by plaintiff, excluding the Salem move. The resulting judgment in favor of plaintiff is the basis of this appeal.

Plaintiff contends that the agreed-upon purchase price for the apartment property was $155,000 and that billing for the earlier Salem house move was kept separate from the sales transaction. Defendants contend that the purchase price

was $175,000 and that it was lowered to $165,000 to reflect the amount owed to plaintiff on the Salem move. (No explanation is given for the discrepancy between the $12,461.35 actually owed and the $10,000 allegedly credited.) Defendants contend that they used $155,000 as a sales price in the final accounting and on their tax forms only because plaintiff did and they wanted to be consistent with him.

Defendants first argue that the trial court erred in considering any evidence of a different sales price other than that of the $175,000 contained in the earnest money agreement. They contend that the earnest money agreement was a written integration of the parties' final agreement and that the parol evidence rule precludes oral contradiction of the agreement terms. The parol evidence rule, embodied in ORS 41.740, provides:

> "When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement, other than the contents of the writing, except where a mistake or imperfection of the writing is put in issue by the pleadings or where the validity of the agreement is the fact in dispute. * * *"

Plaintiff contends that the $175,000 figure and the earnest money agreement were entered into only to facilitate financing of the property sale. The fact that a writing exists does not bring the parol evidence rule into play if the parties do not intend the writing to embody their final agreement. *Hatley v. Stafford,* 284 Or 523, 527, 588 P2d 603 (1978); *Nat. Cash Reg. Co. v. I.M.C., Inc.,* 260 Or 504, 491 P2d 211 (1971). Whether the parties intended to integrate their agreement in the writing is a question of fact in each case. *Caldwell et ux v. Wells,* 228 Or 389, 395, 365 P2d 505 (1961). Parol evidence is admissible to show that the agreement was or was not intended as a complete integration of the contract. *DeVore v. Weyerhaeuser Co.,* 265 Or 388, 403, 508 P2d 220, *cert den* 415 US 913 (1973); *see also Pio v. John B. Gilliland Const.,* 276 Or 975, 987, 560 P2d 247 (1976) (Denecke, C.J., specially concurring); 3 Corbin, Contracts, § 581-585 (1960).

We conclude that the trial court correctly considered plaintiff's testimony in determining whether the earnest

money agreement was intended as a final integration. Implicit in the trial court's finding that the purchase price was $155,000 is a conclusion that the earnest money agreement was not an integration of their agreement. We agree. The parties agree that plaintiff moved one house as additional consideration for the sale, a matter not contained in the instrument. Further, two different estimations of plaintiff's equity were included in the agreement, one in the addendum never received by the title company and a different one in the papers prepared by the title company. The parties also acknowledge that the final accounting, which would finally determine plaintiff's equity and the amount due to defendants from plaintiff, was not drawn up until after the sale was closed. The fact that the earnest money agreement papers drawn up by the title company showed only a balance owed to defendants of $11,315.54 but the parties agree that the true balance was the $18,439.02 determined after the final accounting is evidence that the parties did not intend the earnest money agreement to be the final integration of their agreement.

██ Defendants finally contend that, even if plaintiff's parol evidence on the agreed purchase price was properly considered, the trial court's decision that the purchase price was $155,000 without credit for the Salem house move is not supported by a preponderance of the evidence. There was evidence supporting each party's contention. The suit to foreclose plaintiff's lien is an equitable matter and, although we review *de novo*, ORS 19.125(3), we accord great weight to the trial court's findings when controverted testimony is given and the trial judge has had an opportunity to observe and weigh the demeanor of the witnesses. *Jensen v. Miller,* 280 Or 225, 570 P2d 375 (1977). We find no reason to reverse.

Affirmed.