J. B. FERGUSON, doing business under the name J. B. FERGUSON COMPANY, Appellant, v. BARON A. BOVEE et ux., Appellees.

No. 47216.

(Reported in 32 N. W. 2d 924)

JUNE 15, 1948.

Roseberry & Pitts, of LeMars, for appellant.

Keenan & Kelley, of LeMars, and Sam G. Pickus, of Sioux City, for appellees.

WENNERSTRUM, J.—Plaintiff, a realtor, brought an action in equity on a real estate listing contract which gave him the exclusive right to sell or to purchase on terms named and for a specified time certain real estate owned by the defendants. The contract was revoked in writing by the owners before the expiration of the time of the listing period. The trial court dismissed plaintiff's petition and taxed the costs to him. He has appealed.

Appellant in his petition, as amended, in Count I asked for specific performance of his right to purchase and, in the alternative, in Count II asked to recover the agreed commission to be paid should a sale be consummated, and, as a further alternative, in Count III asked to recover damages for the breach of the contract by appellees' revocation of it before its expiration. The appellees' answer, as amended, admits the execution of the contract and alleges in substance: (1) that the contract was an attempt to establish both an agency agreement and an option to purchase in the same instrument and that it was void because there was no consideration for it (2) that the contract was an attempt by appellant to merge his personal and representative capacity in the same transaction which would be inconsistent, against public policy, and of no force and effect (3) that the contract was canceled and terminated by a written notice of revocation on or about December 27, 1946, and (4) that any service rendered by the appellant for which he now claims damages was performed after revocation of the listing agreement.

The appellant concedes in this court that the option to purchase and the contract of agency was revoked by the appellees on December 27, 1946, and before the expiration of the period for listing, namely, March 10, 1947. He presents as his sole

ground for reversal in this court the failure of the trial court to allow him damages for appellees' breach of the contract. No mention was made in the court's findings and decree of appellant's claim for damages.

The listing agreement which was entered into between the appellant and appellees is, with some minor deletions, as follows:

"8/12/1946

"J. B. Ferguson Company
314 Security Building
Sioux City 15, Iowa
"Dear Sirs:

"We own the above described land and desire to sell same. For services rendered and to be rendered we grant unto you the exclusive right to sell same without reservation of sale by us or if you desire you may purchase same at any time on or before March 10th, 1947. The price is to be $45.00 per acre and to be paid as follows:

"$2,000.00 cash on notice of sale at which time we agree to execute a contract of sale with purchaser providing for the further payment of

"$7,170.00 in cash on or before March 10, 1947.

"$10,000.00 being the unpaid balance of the first mortgage now against this land which purchaser assumes and agrees to pay as part of the purchase price. Mtg. to bear 4% interest annually.

"In case of sale or purchase we agree to pay you a commission of $2.50 per acre of the total sale or purchase price. For any amount you are able to sell this land for above $45.00 per acre we agree to give you one-half (½) of such amount in addition to the $2.50 per acre on $45.00 per acre.

"Yours very truly,
Baron A. Bovee (signed)
Josephine A. Bovee (signed)

"We accept the employment
herein contemplated,
J. B. Ferguson Company
By J. B. Ferguson (signed)"

The appellant is a licensed real-estate broker in Sioux City, Iowa. The appellees are husband and wife who live on and are the owners of a farm in Plymouth County, Iowa. On August 12, 1946, Baron A. Bovee, one of the appellees, called at the appellant's office in Sioux City, Iowa, relative to the listing for sale of this farm property. Appellant was not there at that time but later that day he and his son went to the Bovee farm, inspected the land and buildings and on this same evening the contract to which reference has previously been made was signed. Due to the condition of the farm land Mr. Bovee asked that no prospective purchasers be brought to the farm until it could be put in better condition. However, between September 12, 1946, and the latter part of November 1946 the appellant and his son made numerous trips to the farm and showed it to a number of persons. It is also shown that the appellant advertised this property on various dates between September 8, 1946, and December 30, 1946, in a Sioux City newspaper and that the cost of this advertising amounted to $50.56. There is some testimony of additional advertising but there is no proof as to the cost of it or the amount paid.

On December 27, 1946, the appellee Baron A. Bovee mailed to the appellant a letter of revocation of appellant's authority to sell the farm which is as follows:

"Westerfield, Iowa
December 27, 1946

"Mr. J. B. Ferguson,
314 Security National Bank Bldg.
Sioux City, Iowa.
"Dear Sir:

"Kindly be advised that I have made up my mind not to sell my farm, at least not until 1948, which farm is described as follows: [description]

"Therefore, you will please not offer my farm for sale. As soon as I have made up my mind to again offer the farm for sale, I will, of course, get in touch with you.

"Thanking you very much for your past favors, I am

"Yours very truly,
BARON A. BOVEE"

There was evidence presented which showed that the appellant made at least ten trips to the farm. It is also shown by the record that his son, who is a real-estate dealer, made several trips. However, it is shown by the testimony that although the son offices with his father he operates independently of him and there is no evidence that he had any interest in the listing agreement which the Bovees gave his father. It is also shown that these trips took the greater portion of the day and that the value of the time given by the appellant was $20 per day. There is further evidence that the mileage to and from the farm was 33 miles, which would make a total mileage of 330 miles traveled in an effort to sell the farm and that this mileage was of the value of ten cents per mile or a total of $33. There is further evidence to the effect that, as claimed by the appellant, he was damaged by reason of the revocation of the listing agreement in the amount of $2.50 per acre for 426 acres or $1,065. This is the amount which appellant sought to recover in Count III of his petition, as amended.

Although it has no particular bearing upon the question involved in Count III it is perhaps well to set out that on March 3, 1947, the appellant and his son called at the farm home of the appellees and tendered to them $2,000 in currency, together with a contract for the purchase of the farm by the appellant, as provided by the listing agreement. The appellees refused to accept the money and to execute the contract of purchase tendered by the appellant.

I. Can the appellee, the landowner, revoke the listing contract prior to the termination date as noted in it and if he should do so can he be held liable in damages? Our answer is in the affirmative on both propositions. We said in Knudson & Richardson v. Laurent, 159 Iowa 189, 192, 140 N. W. 392, 393:

"As a rule, unless the agent's authority be coupled with an interest—which must be something more than the commission to be earned—it may be revoked at any time by the principal, and, even if the agent be given a particular time within which to perform, the agency may be revoked before the broker has performed his contract, by finding the purchaser, although, under some circumstances, the principal may be liable for dam-

ages. In such cases, however, the action must be for damages for breach of contract, rather than upon the contract for the commission agreed to be paid." (Citing cases.)

In 8 Am. Jur., Brokers, section 40, it is stated:

"Although the principal may revoke the broker's agency notwithstanding the employment, is to continue for a definite time, unless such revocation is for cause, he renders himself liable for such damages as are the proximate result of his termination of the employment contract."

In 12 C. J. S., Brokers, section 17, page 52, it is stated:

"* * * A broker, however, is entitled to damages for the wrongful revocation of his agency before the expiration of the period of the agency as fixed by the contract, as where the revocation is made, during such period, after he has expended time and money in performance of the contract, as contemplated thereby, or has performed services or commenced negotiations * * *."

The authorities previously quoted hold that the owner or principal can be held for damages by reason of the termination of the listing contract. The next question then that must be considered is, What is the measure of damages under such circumstances? In 12 C. J. S., Brokers, section 17, page 54, it is stated:

"* * * The broker is entitled to recover, in case of revocation of his agency, expenses incurred and reasonable compensation for services performed, which expenses and services were within the contemplation of the contract when entered into."

See, also, Gossett v. McCracken, 189 N. C. 115, 126 S. E. 117.

We feel that the statement made in Garibaldi v. Rubenstein, 99 N. J. Law 223, 225; 122 A. 727, 728, is applicable to the situation in the present case as bearing upon the question of the measure of damages. It is there stated:

"The record shows that the plaintiff did not produce a person at any time who was willing to pay the price mentioned

for the property, or a sum acceptable to the defendant. * * * It is true, however, that the plaintiff advertised the property. His salesman, Louis B. Stern, took several persons to look at the property. He listed it and he spoke to his salesmen in the office about it, but there is no evidence that the plaintiff ever produced a purchaser for the property, or that the defendant prevented him from procuring an acceptable purchaser. We think the plaintiff is limited in damages to the loss sustained. The rule stated in the books for a recovery of damages for a breach of contract, illustrated by many cases, is: The measure of damages in the case of a breach of a contract is the amount which will compensate the plaintiff for the loss which a fulfillment of the contract would have prevented or the breach of it had entailed. 17 C. J. 847, par. 168. The damage which actually results from the breach and which will compensate the plaintiff for the injury sustained. 13 Cyc. 156, par. D. Such as may fairly and reasonably be considered as arising naturally from the breach. 13 Cyc. 33, par. 3; 8 R. C. L. 451, par. 22."

Inasmuch as the appellant did not complete a sale prior to the revocation of the listing agreement we cannot hold that he is entitled to the amount of commission he would have earned if he had made a sale. However, upon the authorities cited it is our holding that he is entitled to such damages as will compensate him for the injury sustained. He therefore should recover the amount of money which it is shown that he expended for advertising in the amount of $50.56, an amount for the mileage which he traveled which would be $33, and the value of the time of the trips to the farm which is shown to be worth $20 a trip or $200. The appellant presented proof of the value of the services rendered and of the expenditures made. The appellees have not presented any evidence that questions this proof. Under the circumstances we therefore hold that the appellant should recover on the items referred to in the total amount of $283.56.

II. This action, having been brought in equity, is triable de novo before this court. There was no motion made in the trial court to transfer the claim of damages as set out in Count III to the law court. We therefore hold we are under

obligation and justified in reviewing here the evidence presented relative to the damages the appellant claims he sustained. Kimmel Inv. Corp. v. Renwick, 220 Iowa 362, 364, 261 N. W. 775; Lincoln Twp... Sch. Dist. v. Redfield Consol. Sch. Dist., 226 Iowa 298, 302, 283 N. W. 881; 30 C. J. S., Equity, section 72, pages 425, 426.

Under the record as presented we hold that the damages sustained by the appellant are in the amount as heretofore stated and that the trial court was in error in dismissing appellant's cause of action. We therefore reverse and remand with instruction that a decree be entered in the district court in conformity with this opinion.—Reversed and remanded.

MULRONEY, C. J., and OLIVER, BLISS, HALE, GARFIELD, and HAYS, JJ., concur.

SMITH and MANTZ, JJ., specially concur.

SMITH, J. (specially concurring)—I concur in a reversal of this case but do not agree with the proposed or ordered disposition upon remand.

I construe the contract to be one authorizing plaintiff as agent, for a fixed period of time, to sell defendants' property for a fixed price, and agreeing to pay a fixed commission in event of sale to a third person or to plaintiff himself. We are not concerned with the "option to purchase" as such, as no claim is made for damages for its breach. The trial court probably correctly held it unsupported by a consideration.

It is however a part of the *agency* contract. Plaintiff could earn his commission by procuring a purchaser within the allotted time, whether that purchaser was himself or another.

It seems clear to me that if plaintiff could have shown that when the agency was wrongfully canceled he had a purchaser ready and able to buy, the measure of his damage for the breach would be the commission he would have earned had he been permitted to complete the sale.

In 12 C. J. S., Brokers, section 17, pages 52, 53, it is said:

"A broker, however, is entitled to damages for the wrongful revocation of his agency * * * provided he shows that he

could have made a sale or produced a suitable purchaser * * * within the time limited by the contract."

See, also, 8 Am. Jur., Brokers, section 40, note 18 and cases cited; Cloe v. Rogers, 31 Okla. 255, 121 P. 201, 38 L. R. A., N. S., 366 and note.

This agency contract expressly authorized plaintiff to become the purchaser if he so desired and expressly provided:

"In case of sale *or purchase* we agree to pay you a commission of $2.50 per. acre of the total sale or purchase price." (Italics supplied.)

There was therefore a potential purchaser at all times, including the time of breach by defendants. Before the expiration date of the agency contract plaintiff tendered himself as a buyer within the strict terms of the contract. I think he thereby became entitled to the full amount of his commission as damage for the breach.

I would reverse and remand with direction that judgment be entered accordingly.

MANTZ, J., joins in this special concurrence.