H. M. SELDON COMPANY *v.* CARSON

1. BROKERS—LISTING CONTRACT—BREACH—DAMAGES—COMMISSION.
   The general rule that a broker is entitled to his commission on a sale of real estate only when he finds a buyer ready, willing, and able to buy and its exception where the owner makes a sale in breach of an exclusive listing agreement, require that there be an actual sale or a buyer ready to buy, and damages for breach by the owner are properly measured by the value of the commission.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 12 Am Jur 2d, Brokers § 229.
Real-estate broker's right to commissions, under contract calling for net price or entitling broker to all above a specified price, where sale is not completed because of refusal or fault of owner. 144 ALR 921.
[2] 17 Am Jur 2d, Contracts §§ 441–447, 521.
[4] 12 Am Jur 2d, Brokers §§ 53, 229, 244.
Real-estate broker's right to recover in quantum meruit for services although contract is not in writing as required by statute. 41 ALR2d 905.

2. DAMAGES—CONTRACTS—BREACH—LOST PROFITS.

> Awards of lost profits as damages for breach of contract are permissible where they may be seen as within the contemplation of the parties at the time of the execution of the contract, spring from the breach, and are subject to determination with a "reasonable" degree of certainty as opposed to being "conjectural or speculative".

3. BROKERS—LISTING CONTRACT—BREACH—DAMAGES—LOST PROFITS

> The proper measure of damages for breach of an exclusive listing contract where no buyer has been produced by the broker and no sale has been made by the seller may include lost profits only if the broker has demonstrated that it was reasonably certain he would have earned his commission but for the action of the seller.

4. BROKERS — LISTING CONTRACT — BREACH — DAMAGES — QUANTUM MERUIT.

> A broker cannot recover in *quantum meruit* for the cost of promoting property after breach of an exclusive listing contract where he failed to prove his expenses incurred in the promoting of the property, but chose instead to stand on a theory of lost profits which were too speculative to be awarded.

Appeal from Wayne, Charles S. Farmer, J. Submitted Division 1 November 13, 1970, at Detroit. (Docket No. 8558.) Decided January 21, 1971.

Complaint by H. M. Seldon Company against James and Ursula Carson for breach of contract. Judgment for defendants. Plaintiff appeals. Affirmed.

*Goldstein & Goldstein,* for plaintiff.

*Sugar, Schwartz, Silver, Schwartz & Tyler,* for defendants.

Before: V. J. BRENNAN, P. J., and BRONSON and PETERSON,* JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

V. J. Brennan, P. J.   From a judgment of no cause of action in a suit to recover brokerage commissions under a written contract, plaintiff appeals.[1]

In December of 1965, James Carson telephoned the H. M. Seldon Company (hereinafter referred to as "Seldon"), a real-estate brokerage office specializing in industrial and commercial property, for the purpose of engaging them to sell certain business property located in the City of Detroit known as Carson's Chop House.   Mr. Eldon K. Andrews, a vice president of Seldon, went to the property, met Carson, and began negotiations for a listing agreement.   After studying the property and consulting with other members of his company, Mr. Andrews estimated its value at $350,000 to $400,000.   Carson indicated that he wanted to list the property for $500,000.   In reply Mr. Andrews offered two proposals: Seldon would list the property for $400,000 and pay the cost of advertising and promotion; or would list it for $500,000 and Carson would pay advertising and promotion.   It was finally agreed that Seldon would pay all costs and that the property would be listed for $425,000.

On January 3, 1966, an exclusive listing agreement was executed by the parties.   Seldon was to get a 6% commission if a sale of the property was made to a purchaser obtained by Seldon or Carson during the six-month duration of the listing.

Seldon immediately set about to sell the defendant's real estate: brochures were prepared; letters were mailed to select prospects; and ads were taken out in newspapers.   Mr. Andrews testified that a greater response than was anticipated was received from potential buyers and that he showed the property to some prospective buyers.

---

[1] A prior appeal of this same case is reported at 11 Mich App 613.

On March 14, 1966, the defendants sent a notice of revocation of the listing without stating any reason therefor. It later appeared that the revocation was prompted by Mr. Carson's dissatisfaction with the manner in which the listing was being handled. He felt that Seldon had broken its promise to keep the listing confidential, because an agent from his employees' union had found out about the listing and came to his place of business inquiring as to Carson's plans for the sale of the property.

Within a week's time, Carson had entered into a listing agreement with Partridge & Associates, Inc., which provided for the sale of the identical property for the sum of $550,000. This was an exclusive listing for a period of one year. Plaintiff then filed suit for breach of contract and sought the value of the commission as the measure of damages. The lower court held that the plaintiff's measure of damages was not lost profits, but merely the reasonable value of its services in promoting the property up to the time of revocation. Since Seldon refused to submit evidence on the issue of its expenses and chose to rely solely on the theory of "lost profits", the court granted judgment in favor of defendants due to lack of proof on the issue of damages.

For the purposes of this appeal, the only issue necessary to decision is whether the trial court applied the proper measure of damages.

It is undisputed that Seldon had never produced a ready, willing and able buyer; nor did Carson himself sell the property within the period of the exclusive listing agreement. The question thus presented is whether the plaintiff may recover as damages for wrongful revocation of its agency under an exclusive listing agreement the amount of its commission where it has not produced a ready, willing, and able buyer and where the seller has not himself sold the

property within the period of the listing. We think that it cannot.

It is axiomatic that a broker must find a buyer who is ready, willing, and able to purchase the property before he is entitled to his commission. *Crawford* v. *Cicotte* (1915), 186 Mich 269; *Wright* v. *Beach* (1890), 82 Mich 469; *Hendricks* v. *Cobb* (1919), 208 Mich 595. An exception to this rule was noted in *Ladd* v. *Teichman* (1960), 359 Mich 587, 595, 596:

> "[W]here a contract to sell real estate contains a provision for exclusive sale rights * * * , and the broker is able to show substantial performance of the duties imposed upon him by the contract (even though he does not produce a buyer), when the owner makes the sale within the contract dates, the contract is held to be enforceable and the broker entitled to his commission."

See also *Seelye* v. *Broad* (1967), 379 Mich 289.

It is significant that the general rule and the exception require either that there be an actual sale or a buyer ready to buy. When one of these two factors is present, it is taken as established that, except for the action of the seller, the broker would have earned his commission. In such circumstances, the value of the commission is the proper measure of damages. Where, however, neither factor is present, we cannot lay down a hard-and-fast rule allowing or denying recovery of lost profits.

In *Crawford* v. *Cicotte* (1915), 186 Mich 269, the Court dealt with a problem similar to the one before us. A broker sued for his commission after the seller wrongfully revoked an exclusive listing agreement prior to its expiration. It was admitted that no ready, willing, and able buyer had been produced. The Court said in denying the broker's claim for lost profits (p 272):

"In the case at bar it does not affirmatively appear that the plaintiff lost any profits through the breach of the contract by the defendants. Up to the time the sale was consummated by the defendants,[2] he had secured no purchaser willing to pay the price demanded by the defendants. Whether he would have been able to secure such a purchaser within the time limit fixed by the contract is entirely problematical."

In other words, under general contract principles, damages are too speculative to provide a basis for recovery in absence of a showing that it was reasonably certain that the property would have been sold within the time limit of the listing but for the wrongful revocation.

To the same effect is the case of *Fister* v. *Henschel* (1967), 7 Mich App 590. There again the Court was faced with the issue of the proper measure of damages for breach of an exclusive listing contract for the sale of a number of lots in a subdivision. The seller had revoked before the listing expired and before the broker had produced buyers for all the subdivision lots. The plaintiff buttressed his claim for lost profits with the following proofs: 1. he was an established realtor; 2. that sales of comparable lots in the same subdivision were made prior to revocation; 3. sales of comparable lots after revocation; 4. a shortage of lots available to the broker's office due to his reliance on the listing agreement; 5. the cost of doing business as established in the operation of his office. The Court in discussing the test to be used in awarding damages said (pp 595, 596):

"Judicial pronouncements on lost profits as a measure of damages in contract cases are in abun-

---

[2] This case was decided prior to the rule announced in *Ladd* v. *Teichman, supra,* and the fact that the seller made an unassisted sale was not material.

dant supply in Michigan case law. Broadly put, awards of lost profits are permissible where they can be seen as within the contemplation of the parties at the time of the execution of the contract, spring from the breach thereof, and are subject to determination with a 'reasonable' degree of certainty as opposed to being 'conjectural or speculative'. *Allison* v. *Chandler* (1863), 11 Mich 542; *Leonard v. Beaudry* (1888), 68 Mich 312; *Moline Furniture Works* v. *Club Holding Co.* (1937), 280 Mich 587.

"The facts of this case, viewed from the perspective of established precedent, present no obstacles to an award of lost profits with reference to the criteria of contemplation or connection with the breach of the contract. The requirement of reasonable certainty rather than conjecture or speculation, however, presents greater difficulty because no clear-cut line of demarcation between the 2 categories has been or can be developed accommodating the varied factual elements encountered from case to case. Employment of the general test of reasonable certainty is retained then for the simple reason that we have nothing better. 5 Corbin, Contracts, § 1020. In the last analysis, each case must be judged on its individual merits in light of the general principle and its past application by the courts."

The Court then held that the plaintiff was entitled to recover the value of his commission under the "reasonable certainty" test.

In light of the foregoing we hold that the proper measure of damages for breach of an exclusive listing contract where no buyer has been produced by the broker and no sale has been made by the seller may include lost profits only if the plaintiff has demonstrated that it was reasonably certain he would have earned his commission but for the action of the seller. Accord: *Brady* v. *East Portland Sheet Metal Works* (1960), 222 Or 584 (352 P2d 144); *Davis* v. *Boyd* (1968), 118 Ga App 198 (162

SE2d 880); *Manzo* v. *Park* (1952), 220 Ark 216 (247 SW2d 12).

In the present case, the plaintiff's only proof on the likelihood of finding a buyer was the testimony of Mr. Andrews. On direct examination he stated that there was "a greater than usual response and interest in the property". He also testified that he had taken three prospective purchasers to inspect the property. The trial court, sitting without a jury, found as a fact that plaintiff failed to prove that it could have sold the property or that the market was such that a sale could have been effectuated had not the defendant revoked the contract. In view of the scant testimony on this issue, we cannot say that the findings of the trial court are clearly erroneous. GCR 1963, 517.1; *Texaco, Inc.,* v. *Lumsden* (1970), 23 Mich App 30. Under the authorities cited above, this failure of proof is fatal to plaintiff's claim for lost profits. Plaintiff also failed to show its expenses incurred in promoting the property and therefore is not entitled to recover on the basis of *quantum meruit*. See *Ferguson* v. *Bovee* (1948), 239 Iowa 775 (32 NW2d 924).

As a result, the judgment of the circuit court must be affirmed.

Affirmed.

All concurred.