117 N.J. Super. 480 (1971)
285 A.2d 80
BARRY NORMAN AGENCY, INC., OF MORRIS COUNTY, A NEW JERSEY CORPORATION, PLAINTIFF,
v.
ANNA ELIAS, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided December 8, 1971.
*481 Mr. Aaron R. Stier for plaintiff (Messrs. Rudd, Ackerman, Breitkopf and Leibowitz, attorneys).
Mr. Barry L. Gardner for defendant.
MUIR, J.C.C. (temporarily assigned).
This is an action to recover under an exclusive listing agreement a 7 1/2% commission on the sale price of defendant's home in Hackettstown, New Jersey.
Plaintiff brings this action on an agreement dated April 23, 1969, executed by defendant and which provides that six months from date plaintiff has an exclusive right to sell and is entitled to a commission in the event the property is sold or contracted to be sold by anyone during the term thereof, i.e. regardless of whether plaintiff negotiated the contract of sale, it is entitled to a real estate commission.
The uncontroverted facts indicate that in April 1969, Lawrence Epstein, a real estate salesman for plaintiff, approached defendant Mrs. Elias knowing she desired to sell *482 her home. As the result of two meetings between Epstein and Mrs. Elias the exclusive agreement was executed by her and accepted by plaintiff through Epstein, as reflected by his signature. Defendant is illiterate. She received no education in this country or in her native land from which she emigrated in 1929.
The agreement is a one-page document. On one side house-type conditions, taxes, proposed sale price and other information are set forth. The reverse side contains the actual agreement and it is this side that defendant signed.
The agreement provides, in part:
In consideration of your listing and endeavoring to sell our property described on the reverse side hereof, the undersigned hereby authorizes you to sell said property at the price and upon the terms set forth in this authorization, or at any other price or terms the undersigned may agree to accept therefor, and upon your procuring a purchaser, agree to pay you a commission of Seven and one half (7 1/2) percent of the purchase price thereof.
Your authority hereunder shall be sole and exclusive for a period of Six (6) months from the date hereof, up to and including October 22, 1969.
The undersigned agree to refer to you all inquiries received regarding the purchase of said property, whether from real estate brokers, prospective purchasers or others, and further agree to exhibit the premises at reasonable hours during the period of this authorization.
Your commission shall also be considered earned in the event said property is sold or contracted to be sold by anyone during the term of your exclusive authority hereunder.
Should the buyer require mortgage financing, the undersigned will agree in the Contract of Sale that you are to have ninety days in which to arrange same. The undersigned will pay to you or to anyone designated by you, the charges of the lender amounting to 5% of the amount of the aforesaid mortgage, as a commitment and discount fee, upon your procuring such commitment, and agree to cooperate with you, prospective lenders and their representatives, and to execute all papers and instruments as required by the prospective lenders.
It is further agreed that Barry Norman Agency shall have the right to erect or place a sign on the premises for the purpose of advertising.
On May 3, 1969, ten days after signing the agreement, defendant telephoned Epstein and stated she did not want to pay any points to a mortgage-lending institution and not *483 to bring anyone to the house. Plaintiff did not show the house nor did it list it for sale or do anything to effectuate a sale. Epstein testified that the management of plaintiff decided to let the exclusive run out after the May 3 telephone call.
The sale of defendant's house was effected by another agency, which was paid a commission within the time of plaintiff's exclusive.
A great deal of testimony centered around the explanation of the agreement by Epstein to defendant prior to her signing. He claims he explained it almost word for word and that she appeared to understand, taking out her glasses and following his explanation.
Defendant testified that Epstein did not explain the document word for word. She also testified, and was corroborated by her daughter, that Epstein said, go ahead and sign it, nothing will happen. Their testimony and manner of speech left the impression that Epstein badgered defendant into signing the agreement.
Defendant spoke with an accent. She has to be characterized as a person who did not understand all that was said to her. The court's first impression was that she did understand, but on later analysis and inspection it became quite clear that she tried to create an impression of understanding when in fact she did not understand. Her daughter described her as someone to whom four and five explanations would have to be made before there was clear comprehension.
An exclusive listing of this nature involves a unilateral promise which, if accepted by the realtor, effectuates a contract. 1 Williston, Contracts, § 13 at 26 (1957). There is no question here that the listing agreement was accepted by plaintiff.
The relationship between broker and seller has been characterized as one involving substantial inequality of bargaining power. Ellsworth Dobbs, Inc. v. Johnson, 50 N.J. 528, 557 (1967). Certainly it is a relationship that requires substantial scrutiny when brought before the courts.
*484 In the normal situation where a broker is engaged to produce a buyer, the broker earns his commission when a contract is signed and the title closes. Ellsworth Dobbs, Inc. v. Johnson, supra, at 551.
The broker in this case seeks a commission when it did not advertise the property, did not show the property to any prospective purchaser, and did not produce the purchaser.
The agreement by its terms creates an exclusive right to sell in the broker, who argues that it had the right, in light of defendant's telephone call of May 3, to sit back and let the exclusive run out, and now come forward and collect the commission.
It has been recognized that a broker is entitled to a commission under an exclusive right to sell, even though he does not produce the buyer. Cf. Rose v. Minis, 41 N.J. Super. 538, 544 (App. Div. 1956). However, the language of that case is dictum because it was decided on other grounds. It relies on Martin Realty Co. v. Fletcher, 103 N.J.L. 294 (Sup. Ct. 1927), which recognizes the distinction between an exclusive agency and an exclusive right to sell, and decided on the agency relationship. The facts in Rose v. Minis are similar to those at bar in that the broker did not produce the buyer.
It would seem, for the reasons of public policy enunciated in Dobbs, that the distinction between exclusive agency and exclusive right to sell should not exist when, under all the circumstances of the case similar to the present one, no buyer is produced. It is not, however, for a trial court to make these decisions.
Defendant did revoke the exclusive right to sell by her telephone call of May 3, and even if that revocation is wrongful, the broker is only entitled to damages for breach of contract rather than for the commission claimed under the contract. Ferguson v. Bovee, 239 Iowa 775, 32 N.W.2d 924 (Sup. Ct. 1948).
The broker's remedy for wrongful revocation by the seller is an election between considering the contract rescinded *485 and suing for actual damages and such profit as he can establish would have been his but for the revocation, or proceeding and, upon success in performing the contract, recovering the agreed compensation. 12 Am. Jur.2d, Brokers, § 64 at 819. The limitation to the actual loss sustained, after the election, has been recognized in this State. Garibaldi v. Rubenstein, 99 N.J.L. 223, 225 (E. & A. 1923). It has also been recognized in other states. Walder v. Allen, 31 Wis.2d 70, 141 N.W.2d 867 (Sup. Ct. 1966).
Plaintiff made no attempt, nor did it prove any actual loss or prospective profit lost, and therefore has no cause for action. Having done nothing, it is entitled to nothing.