127 N.J. Super. 74 (1974)
316 A.2d 71
KULP REAL ESTATE, PLAINTIFF,
v.
RUDOLPH FAVORETTO AND KATHERINE FAVORETTO, HIS WIFE, DEFENDANTS.
Superior Court of New Jersey, District Court  Cumberland County.
Decided February 14, 1974.
Messrs. Milstead and Ridgway (Mr. Richard Milstead appearing), attorneys for plaintiff.
*75 Messrs. Shapiro, Brotman, Eisenstat and Capizola (Mr. Charles W. Gabage appearing), attorneys for defendants.
TESTA, J.C.C., Temporarily Assigned.
Plaintiff Kulp Real Estate, a real estate brokerage firm, sued Rudolph Favoretto and Katherine Favoretto, his wife, for the sum of $1,600 allegedly owed under a listing agreement. Defendants, as owners of their home situated in Vineland, New Jersey, entered into an exclusive listing agreement with plaintiff broker. Plaintiff's claim is based upon this written agreement, which contains a provision that entitles the broker to one-half of the purchaser's deposit in the event of a forfeiture. Defendants assert that this provision is void and unenforceable as against public policy of the State of New Jersey.
An agent of plaintiff, Roger Scull, who was not available for the trial, solicited a listing from defendants. On April 27, 1970 the litigants executed an agreement which was entitled "Exclusive Listing Agreement of Multiple Listing Service, Affiliated with Cumberland County Board of Realtors."
The fifth undenoted paragraph of this agreement stated:
In the event of forfeiture the deposit shall be divided equally between Owner and Agent. However, said Agent shall not receive a share which is in excess of the above stated commission.
This agreement was extended by the parties until June 14, 1972. On April 6, 1972 defendants entered into a written contract of sale with a purchaser who was produced by plaintiff. This contract provided for a 10% deposit ($3,200) and a closing date was established.
Nevertheless, settlement was never completed due to the purchaser's failure to consummate the sale. Plaintiff instituted this suit and a trial was conducted without a jury. It now becomes necessary for this court to determine the respective rights of the litigants in the deposit and the validity *76 and enforceability of the fifth paragraph of the exclusive listing agreement.
The basis of defendants' position concerning the enforceability of the fifth paragraph of the exclusive listing agreement is the landmark decision of Ellsworth Dobbs, Inc. v. Johnson, 50 N.J. 528 (1967). In Dobbs a real estate broker sued the owner and the defaulting purchaser for his commission under a listing agreement. The default resulted from the purchaser's inability to obtain adequate financing. The court, while recognizing the legal principle that persons should not be unnecessarily restricted in their freedom to contract, also indicated its willingness to invalidate unconscionable contractual provisions which clearly tend to injure the public. This especially is true where groups through "experience, specialization, licensure, economic strength or position, or membership in associations created for their mutual benefit and education, have acquired such expertise or monopolistic or practical control in the business transaction as to give them an undue advantage." Id., at 553; Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358 (1960). The court, in considering the status of a broker and seller in a real estate transaction, stated:
Whenever there is substantial inequality of bargaining power, position or advantage between the broker and the other party involved, any form of agreement designated to create liability on the part of the owner for commission upon signing of a contract to sell to a prospective buyer, brought forward by the broker, even though consummation of the sale is frustrated by the inability or the unwillingness of the buyer to pay the purchase money and close the title, we regard as so contrary to common fairness, as to require a court to condemn it as unconscionable. [50 N.J. at 555; emphasis added]
The court held that a broker was not entitled to a commission from the seller if title does not pass due to a default by the purchaser. The court further stated:
Where the buyer is the defaulting party, in our judgment public policy requires the courts to read into every brokerage agreement or contract of sale a requirement that barring default by the seller, commission *77 shall not be deemed earned against him unless the contract of sale is performed. By the same token, whenever the substantial inequality of bargaining power, position or advantage to which we have adverted appears, a provision to the contrary in an agreement prepared or presented or negotiated or procured by the broker shall be deemed inconsistent with public policy and unenforceable. [Id., at 555-556]
It is noteworthy that although the fifth paragraph of the listing agreement fails to expressly state that the broker is entitled to his commission upon the execution of a contract of sale with a purchaser, the practical effects are the same as if such language had been employed. Once the contract of sale is executed, the broker becomes entitled to one-half of the deposit, as long as this amount does not exceed the commission, regardless of the passage of the title. Such language is similar to the examples of listing agreements illustrated in the Dobbs decision, 50 N.J. at 554-555, which are designed to impose on the owner liability for brokerage commissions immediately upon execution of a contract to sell to a purchaser produced by the broker. Such a provision in a brokerage agreement is contrary to the principles expounded in Dobbs and therefore unenforceable as against public policy if the Dobbs decision is applicable. The issue now before this court is whether there was a "substantial inequality of bargaining power, position or advantage" between plaintiff broker and defendants.
Defendants are not businessmen but are simple homeowners who have had not prior real estate experience. They were not represented by counsel for the execution of the brokerage agreement. This agreement is printed on a standardized real estate form, apparently compiled by or sanctioned by the Cumberland County Board of Realtors. There was testimony to the effect that defendants negotiated for an installment sale in order to minimize their capital gains tax consequences. However, this factor alone does not affect their status as unsophisticated lay persons involved in their first real estate transaction.
*78 Conversely, plaintiff is an established brokerage firm, with all the benefits of national, state and county real estate boards for legal expertise in the drafting of their standardized listing agreements. As has been pointed out in Barry Norman Agency, Inc. v. Elias, 117 N.J. Super. 480 (Law Div. 1971):
The relationship between broker and seller has been characterized as one involving substantial inequality of bargaining power. * * * Certainly it is a relationship that requires substantial scrutiny when brought before the courts. [at 483]
Now, this should not be construed to mean that any relationship between a broker and a seller involves a substantial inequality of bargaining power. A recent appellate court decision has reversed a lower court's finding that there was "substantial inequality of bargaining power" between broker and seller. The court found that the broker, a T.V. repairman, was a part-time agent; that the seller's attorney prepared the brokerage agreement and it was executed in the attorney's office. The broker was not represented by counsel, and the broker accepted a 3% commission as opposed to a customary fee of 6%. Kennedy v. Roach, 122 N.J. Super. 361 (App. Div. 1973).
Clearly, the present case illustrates the type of situation which the Dobbs case was intended to prevent. Here we have the broker soliciting a listing agreement from homeowners. The listing agreement is printed on a standardized form which has the sanction of a large association of realtors. Plaintiff is an experienced real estate firm, an expert in real estate transactions and an employer of full-time experienced agents. On the other hand, defendants are lay persons with no special business knowledge and no prior experience in real estate transactions. Defendants signed a brokerage agreement without benefit of counsel, and after executing a contract for sale and suffering default by the purchaser who had been produced by plaintiff they were informed that one-half *79 of the deposit, retained as damages, belonged to plaintiff broker.
It is, therefore, this court's determination that between Kulp Real Estate and Rudolph and Katherine Favoretto there is a substantial inequality of bargaining power, position and advantage. Therefore, the fifth paragraph of the listing agreement is unenforceable and void against the public policy of the State of New Jersey. Defendants have elected to retain the deposit rather than institute legal action against the defaulting purchaser. The Dobbs court held:
When he [seller] passively accepts the fact of the buyer's inability or refusal to perform the contract of sale, and in good faith, in order to bring the matter to an end, receives in return for the exchange of releases what in fairness can only be regarded as salvage as distinguished from the substantial equivalent of performance, in justice and in equity he should not be held to have incurred thereby any liability to the broker. [50 N.J. at 558]
The court notes that this decision does not leave plaintiff broker without a remedy. In addition to endowing the seller with certain rights in real estate transactions, Dobbs also permitted the broker to obtain compensation against the defaulting purchaser by implying a promise on the part of the buyer to complete the transaction with the owner. 50 N.J. at 550. It is this court's opinion that plaintiff has a cause of action against the defaulting purchaser.
Judgment will be entered in favor of defendants.